UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS POLLOCK, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. 21-cv-09975-JCS<br><br>**ORDER DENYING MOTION TO DISMISS AND MOTION TO STRIKE COMPLAINT**<br><br>Re: Dkt. No. 14 |

## I. INTRODUCTION

Plaintiffs Thomas Pollock and Eileen Tabios bring this action against Defendant Federal Insurance Company seeking compensation under a homeowners' insurance policy purchased from Defendant on their home in St. Helena, California, which was severely damages in the 2020 Glass Fire. Presently before the Court is Defendant's Motion to Dismiss and Motion to Strike Complaint ("Motion"), in which Defendant argues, *inter alia*, that Plaintiffs' claims are not ripe for adjudication because investigation of the insurance claim is ongoing and Plaintiffs have not supplied requested documents or completed examinations under oath ("EUOs"), as required under the policy. The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the motion hearing set for April 1, 2022 pursuant to Civil Local Rule 7-1(b). **The Case Management Conference set for April 1, 2022 will be moved from 9:30 a.m. to 2:00 p.m. on that date**. For the reasons stated below, the Motion is DENIED.[1]

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. The Complaint

Plaintiffs allege that they have resided at 256 North Fork Crystal Springs Road, St. Helena, CA 94574 (the "Property") for two decades. Complaint ¶ 2. According to Plaintiffs, the Glass Fire forced them to evacuate their home at approximately 4:20 a.m. on September 27, 2020, as the wildfire burned on the Property and their home filled with fire residue and contaminants. *Id.* The fire actively burned for 23 days, displacing approximately 70,000 people from their homes, including Plaintiffs. *Id.* According to Plaintiffs, the fire burned to the ground their guest house and guest house contents and directly burned against the walls of the nearby garage and wine cellar through which Plaintiffs gain access to the guest house. *Id.* ¶ 3. They allege the fire also burned infrastructure, landscaping, and land, both upslope and downslope from Plaintiffs' home, causing extensive damage to the entire 46.5 acres of the Property. *Id.*

Damage from the fire took the form of thermal damage (including partial melting of the roof felt on the main house, thermal damage to waterproofing membranes on all the structures on the Property and cracking of cement and rebar walls and the slab floor of the wine cellar and garage) and non-thermal and contamination damage. *Id.* ¶¶ 3-4. As to the contamination damage, Plaintiffs allege that all of the structures, infrastructure, and contents are coated inside and out with combustion by-products, including soot, char, ash, and other particulate matter, as well as toxic chemicals such as formaldehyde, vinyl chloride, hydrogen cyanide, and hydrochloric acid. *Id.* ¶ 4. Further, according to Plaintiffs, the extensive thermal and non-thermal damage to the Property has compromised the structural integrity and expected lifespan of all structures, infrastructure, and equipment and has caused other effects such as etching and discoloration of natural materials. *Id.* ¶ 5. Plaintiffs allege that they have conducted extensive testing of the Property since the fire, including evaluations of the buildings and other structures, contents, surrounding land, and landscaping and that the testing confirms lasting damage to all areas of the Property. *Id.* ¶ 26.

Plaintiffs allege that Defendant insured them against all risks of physical loss caused by the Glass Fire to their real property and contents, and for loss of use, under a residential fire insurance

1  policy covering the Property: Policy Number 11776821-01, issued for the period July 19, 2020 to
2  July 19 2021 ("the Policy"). *Id. ¶* 7 & Ex. 1 (Policy).  Plaintiffs allege that they provided timely
3  notice to Defendant of the covered loss under the Policy and requested that Defendant provide
4  benefits due and owing.  *Id.* ¶ 8.  They further allege that they satisfied all conditions precedent to
5  performance by Defendant set forth in the Policy.  *Id.*

6  According to Plaintiffs, although Defendant made advance payments on a portion of their
7  claim, it materially breached the Policy by refusing to pay the full value of their losses, including
8  not only their property damage losses, but also their standard of living losses and additional living
9  expenses.  *Id.* ¶ 9. Instead, they allege, Defendant has attempted to avoid addressing the merits of
10 the claim and has repeatedly conducted duplicative or manipulative testing on the Property in
11 order to delay or forestall payment.  *Id.* Plaintiffs allege Defendant's failure to pay their covered
12 losses has violated the covenant of good faith and fair dealing by malicious and unreasonable
13 conduct.  *Id.* ¶ 10.

14 Plaintiffs allege that throughout the process of adjusting the claim, because Defendant's
15 investigation was neither diligent nor thorough, they engaged their own experts, at substantial
16 cost, to obtain a thorough and accurate assessment of the scope of damage to the Property and its
17 contents.  *Id.* ¶ 30.  According to Plaintiffs, they diligently provided the results of their
18 investigation to Defendant but instead of acknowledging the extensive testing by Plaintiffs'
19 experts, Defendant obfuscated and delayed unreasonably in order to delay and deny payment of
20 benefits due.  *Id.*  In particular, they contend, rather than contesting the detailed information
21 provided by Plaintiffs' experts, Defendant has refused to engage meaningfully, simply repeating
22 its vague reservations of rights and claiming that its own experts are still in the process of
23 reviewing the information long after that information was provided to Defendant.  *Id.*  ¶ 31. For
24 example, according to Plaintiffs, throughout the adjustment process, Defendant has maintained
25 that its smoke damage assessment shows no need for repairs to the main residence, despite the
26 numerous subsequent reports prepared by Plaintiffs and submitted to Defendant.  *Id.* ¶ 30.

27 Plaintiffs allege that despite its claim that the investigation is ongoing, Defendant has
28 refused to approve an extension of their current lease beyond February 2022, claiming that

3

1    Defendant's investigation has determined that Plaintiffs will be able to return to their home before
2    that date. *Id.* ¶ 32. Plaintiffs also allege that Defendant has sent dozens of experts to visit the
3    Property and collect samples but has only selectively released portions of its sampling results. *Id.*
4    ¶ 33. For example, they allege that Defendant has not released the results of its sampling on
5    December 11-12, 2020 and March 23, 2021 despite multiple requests by Plaintiffs for all claim-
6    related documents, and Defendant only released a portion of the results from its testing on
7    February 24, 2021 seven months later, on September 23, 2021. *Id.* According to Plaintiffs, even
8    the test results Defendant has released to them show pervasive damage to the Property. *Id.*

9    Plaintiffs allege further that Defendant has caused delays to the remediation of the Property
10   by failing to approve and promptly pay amounts necessary to begin repairing the damage. *Id.* ¶
11   34. For example, according to Plaintiffs, although Defendant approved repairs to certain
12   structures on the Property, such as the front gate, a water tank, and a water boiler, on October 21,
13   2020, November 23, 2020, and December 10, 2020, respectively, Defendant did not issue a check
14   for the amounts due for those repairs until a year later, on November 15, 2021, which Plaintiffs
15   received by mail on November 23, 2021. *Id.* Similarly, Plaintiffs allege, on January 12, 2021,
16   Defendant approved a proposal for the removal of debris from the burned down guest house, but
17   that amount was not paid until November 5, 2021. *Id.*

18   Plaintiffs also allege that Defendant delayed the process for repairing the guest house by
19   refusing to accept their experts' assessment that the stem walls for the structure, which had been
20   fire damaged, needed replacement. *Id.* According to Plaintiffs, Defendant instead retained its own
21   expert to inspect the stem walls on January 19, 2021 and, despite promising immediate
22   confirmation of the damage, delayed its decision that the stem walls did indeed require
23   replacement for more than three months, by which time the contractor working on the guest house
24   project had been required to remove its equipment from the site to work on other customers'
25   projects. *Id.* Plaintiffs allege that this made it difficult for them to meet Napa County's mandated
26   deadline for filing all necessary paperwork certifying that they had properly removed the guest
27   house debris, which they only managed to do on the last day. *Id.*

28   Plaintiffs allege that 15 months after the fire, Defendant still has not made a coverage

4

determination with respect to numerous items on the Property, including the dog fencing around the property, land stabilization, and landscaping. *Id.* They allege that Defendant has all information necessary to acknowledge coverage of and pay the claim in full and that they have continued to comply with Defendant's additional requests for information and have repeatedly provided Defendant with access to the Property for further testing and inspection. *Id.* ¶ 35.

Plaintiffs allege that Defendant has refused to respond to their explanations for why payment of policy limits across coverages is due and only repeats the refrain that "[Defendant] continues to investigate this claim under a full reservation of rights." *Id.* ¶ 37. According to Plaintiffs, Defendant continues to insist that the only remedy necessary is "cleaning," and has frustrated their attempts to secure temporary housing that would allow them to maintain their usual standard of living by significantly undervaluing the Property and Plaintiffs' cost of living. *Id.*

Plaintiffs allege further that even for expenses that Defendant has approved, Defendant has significantly delayed making the required payments, despite repeated requests. *Id.* ¶ 40. They allege that on September 8, 2021, they informed Defendant that it was $512,000 behind on payments based on Defendant's own prior approvals. *Id.* According to Plaintiffs, on November 1, 2021, Defendant finally admitted that it was behind on payments and had lost track of invoices and documentation for previously approved expenses. *Id.*

Plaintiffs allege that at the time the Complaint was filed, they had made a claim to Defendant for losses totaling more than $110 million, including property damage losses and additional living expenses necessary to maintain their usual standard of living. *Id.* ¶ 41.

Plaintiffs assert claims for breach of contract (Claim One), declaratory relief for a declaration of the parties' rights and duties under the Policy (Claim Two), breach of the implied covenant of good faith and fair dealing (Claim Three) and negligence (Claim Four). They seek, *inter alia*, compensatory and punitive damages and attorneys' fees and costs.

### B. The Motion

Defendant asks the Court to dismiss Plaintiffs' claims as unripe on the basis that it does not have a current obligation under the Policy to pay because the investigation of the claim is ongoing

and not yet complete.² It further contends the declaratory relief claim is duplicative of the breach of contract claim and should be dismissed on that basis as well. Defendant also argues that the negligence claim fails to state a claim because negligence is not a theory of recovery that is generally available against insurers. Defendant also contends Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails to state a claim because Plaintiffs' allegations of bad faith are conclusory and provide no information as to the basis of this claim.

Defendant contends the Court should strike all references to punitive damage on the ground that the Complaint fails to plead the existence of malice, fraud or oppression, as defined under California Civil Code § 3294. Finally, Defendant asserts that Plaintiffs fail to establish that they are entitled to attorney's fees and costs and therefore the request for those remedies should be stricken from the Complaint as well.

Defendant also asks the Court to take judicial notice of a November 10, 2021 letter its counsel sent to Plaintiffs setting their examinations under oath ("EUOs") for December 14, 15 and 16, 2021 and requesting additional supporting documents. Request for Judicial Notice (RJN). According to Defendant, because Plaintiffs allege in the Complaint that they have satisfied all conditions precedent the Court can consider this letter purportedly showing that they have not supplied all of the documents required under the Policy or completed EUOs on a motion to dismiss.

### III. ANALYSIS

#### A. Legal Standards

##### 1. Legal Standards Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage

---

² Although the notice of motion states that Defendant is seeking dismissal of Claims One, Two and Four on this basis, the body of the motion makes clear that Defendant also contends Claim Three is unripe for the same reasons the other claims are not ripe.

is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

While a district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, a court may consider documents referenced in the complaint and may take judicial notice of matters in the public record, without converting a motion to dismiss into one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)

2. **Rule 12(f)**

Rule 12(f) of the Federal Rules of Civil Procedure provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

7

matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Mag Instrument, Inc. v. JS Prods., Inc*., 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Nguyen v. CTS Elecs. Mfg. Sols. Inc*., No. 13-CV-03679-LHK, 2014 WL 46553, at *3 (N.D. Cal. Jan. 6, 2014) (citing *Whittlestone*, 618 F.3d at 973).

### B.     Request for Judicial Notice

Defendant asks the Court to take judicial notice of a November 10, 2021 letter ("Letter") its counsel sent to Plaintiffs asking for further documentation and scheduling EUOs. *See* RJN, Ex. 1 (Letter).  It is apparent from the Motion that Defendant does not merely seek judicial notice that the Letter was sent but rather, asks the Court to take judicial notice of the truth of counsel's assertions in the Letter to conclude that Plaintiffs have not fully performed under the Policy.  *See* Motion at 1 (stating that "[p]ursuant to provisions of the Plaintiffs' insurance policy, [Defendant] has repeatedly requested that Plaintiffs produce information and documentation to support their claim, and has also requested the Plaintiffs' [EUOs], but to date Plaintiffs have not provided the requested documentation, nor have they appeared for their EUOs" and citing Letter).

Defendant does not argue that its letter to Plaintiffs is subject to judicial notice on the basis that it is a matter of public record.  Rather, it points to Plaintiffs' allegations in the Complaint that they have satisfied all conditions precedent to coverage, suggesting that Plaintiffs somehow rely on the Letter in the Complaint and therefore that it can be considered under the doctrine of incorporation by reference.   Their reliance on the incorporation by reference doctrine is misplaced.  The incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018). On the other hand, "if the document merely creates a defense to the well-pled

8

allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* "Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.* That is what Defendant attempts to do here. Plaintiffs have not relied on Defendant's Letter to establish their claims or even referenced it in the Complaint; rather, the Letter at best establishes that Defendant may have a defense to their claims. As Defendant attempts to use the Letter to contradict the allegations in the Complaint and the Letter is neither incorporated in the Complaint nor a matter of public record, judicial notice is improper. Therefore, the Court DENIES Defendant's request for judicial notice.

### C. Whether Claims are Sufficiently Pled

#### 1. Whether Claims are Ripe

In support of its assertion that Plaintiffs' claims are not ripe for adjudication, Defendant cites Section 2071 California Insurance Code, which adopts a standard form fire insurance policy, as well as the provision in Plaintiffs' Policy providing that Defendant has the right to examine them under oath and to require that they produce all records and documents requested by Defendants. Motion at 7 (citing ECF p. 103). Plaintiffs do not dispute that they are required under the Policy to produce documents and sit for EUOs. Rather, they contend that they have complied with all of Defendants' requests and that it is Defendant that has unilaterally postponed the EUOs and failed to copy documents produced to it. *See* Opposition at 8 n. 1; Haskett Decl., Ex. 1 (email from Plaintiffs' counsel to Defendant's counsel contesting assertion by Defendant's counsel that Plaintiffs were uncooperative in connection with the production of documents). For the purposes of the instant motion, though, they do not ask the Court to resolve this dispute, arguing instead that Defendant's ripeness challenge is an attempt to circumvent black letter law precluding the Court from making determinations of fact on a Rule 12(b)(6) motion. The Court agrees.

Generally, a determination as to whether an insured breached his duty to cooperate is a question of fact. *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 857 (N.D. Cal. 2011) (citation omitted). While this question may be decided as a matter of law if the facts of the case are

"uniformly unfavorable" to one party, Defendant has not made such a showing here.  Rather, Defendants' ripeness challenge implicates hotly disputed facts that are more appropriately resolved on summary judgment.  *See Khoja.*, 899 F.3d at 1003.

Defendant's reliance on *Tarakanov v. Lexington Ins. Co.*, 441 F. Supp. 3d 887 (N.D. Cal. 2020) is also misplaced as that case is distinguishable.  *See* Motion at 8.  In that case the court dismissed a claim for breach of an insurance contract where the plaintiffs did not allege and *could not allege* that a condition precedent for performance by the insurer, namely, repairing or rebuilding their home, had been satisfied.  441 F. Supp. 3d at 897. In contrast, Plaintiffs here have alleged that they have performed all of their obligations under Policy and fully cooperated with Defendants in their investigation of the claim.  At the pleading stage, that is sufficient.  Therefore, the Court rejects Defendant's argument that Plaintiff's claims should be dismissed on the basis that they are not ripe.

### 2. Whether Plaintiffs Have Stated a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant asserts that because Plaintiffs have not alleged a breach of contract claim that is ripe, their claim for breach of the implied covenant of good faith and fair dealing also fails to state a claim.  The Court rejects that argument for the same reason it rejects Defendant's argument the Plaintiffs' claims are not ripe.  Defendant also argues that the claim for breach of implied covenant of good faith and fair dealing fails because "Plaintiffs' allegations regarding the purported breach of contract are virtually identical to those in the claim for breach of the implied covenant of good faith and fair dealing" and therefore the claim is superfluous.  Motion at 9 (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990)).  The Court disagrees.

To prevail on a claim for breach of the implied covenant a plaintiff must establish: "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause."  *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (Cal. Ct. App. 1990).  "Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim." *Harbison v. Am. Motorists Ins. Co.*, 636 F. Supp. 2d 1030, 1041 (E.D. Cal. 2009). " '[T]he covenant of good faith and fair dealing implied in

all insurance agreements entails a duty to investigate properly submitted claims.' " *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc*., 78 Cal.App.4th 847, 879–80 (2000) (quoting *KPFF, Inc. v. California Union Ins. Co.*, 56 Cal.App.4th 963, 973 (1997) (citing *Egan v. Mutual of Omaha Ins. Co*., 24 Cal.3d 809, 817 (1979)).  "The ultimate test of bad faith liability is whether the refusal to pay policy benefits or the alleged delay in paying was unreasonable." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co*., 90 Cal. App. 4th 335, 337 (2001), as modified on denial of reh'g (July 30, 2001).  "The mistaken or erroneous withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability, does not expose the insurer to bad faith liability." *Id.*

Here, Plaintiffs have alleged sufficient facts to raise a plausible inference that Defendant has acted unreasonably in conducting its investigation of their claim.  *See, e.g.,* Complaint ¶ 29 (alleging that Defendant "[d]uring the course of the handling of this claim, [Defendant] ignored evidence of significant costs of repairs and replacement, ignored the evidence generated by its own consultants, misrepresented the available remedies under the Policy, misrepresented testing results and the efficacy of proposed remedies, misrepresented policy benefits and Homeowners' rights under the Insurance Code and applicable regulations, and failed to conduct an adequate investigation of the damage."). That is all that is required at the pleading stage of the case.

### 3. Whether Plaintiffs Have Stated a Claim for Declaratory Relief

Defendant asks the Court to dismiss Plaintiffs' claim for declaratory relief on the basis that it is superfluous and unnecessary as it is duplicative of their breach of contract claim.  Defendant's request is denied.

Because jurisdiction in this case is based on diversity, the Court applies California law to Plaintiffs' declaratory relief claim.  *See GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc*., No. CV1504125MMMJEMX, 2015 WL 12731920, at *20–21 (C.D. Cal. Sept. 21, 2015) (observing that "federal courts have consistently applied California Code of Civil Procedure § 1060 rather than the federal Declaratory Judgment Act when sitting in diversity.") (citing *Acceptance Ins. Co. v. Am. Safety Risk Retention Group, Inc*., No. 08cv1057-L(WMc), 2010 WL 744291, *4 (S.D. Cal. Mar. 3, 2010) (applying § 1060 to a declaratory relief claim); *LeFebvre v.*

*Syngenta Biotechnology, Inc.*, No. C 08-02732 JW, 2008 WL 5245056, *3 (N.D. Cal. Dec. 15, 2008) (same); *Smith v. Bioworks, Inc.*, No. CIV. S-05-1650 FCD EFB, 2007 WL 273948, *4 n. 5 (E.D. Cal. Jan. 29, 2007) ("Plaintiff generally alleges a claim for declaratory relief in his Complaint. Because this is a diversity action, and because plaintiff alleges that California law applies in this action, the court applies California's declaratory relief statute to plaintiff's claims")).

Under California law, "[a]ny person interested . . . under a contract . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties . . . ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time." Cal. Code Civ. Proc. § 1060. "Declaratory relief operates prospectively, serving to set controversies at rest. If there is a controversy which calls for a declaration of rights, it is no objection that past wrongs are also to be redressed; but there is no basis for declaratory relief where only past wrongs are involved. Hence, where there is an accrued cause of action for an actual breach of contract or other wrongful act, declaratory relief may be denied." *Baldwin v. Marina City Properties, Inc.,* 79 Cal. App. 3d 393, 407 (1978) (citing 3 Witkin, Cal. Procedure (2d ed.) Pleading, § 722, pp. 2342-2343.). "Moreover, a court may decline to hear a claim for declaratory relief if adjudication of the issues raised in other claims would fully and adequately determine all matters actually in controversy between the parties." *Philips Med. Cap., LLC v. Med. Insights Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035, 1048 (N.D. Cal. 2007) (citing *Schessler v. Keck*, 125 Cal.App.2d 827, 837(1954)).

Here, Plaintiffs have alleged sufficient facts to show that there is an "actual controversy" as Plaintiffs have alleged that Defendant's conduct of failing to compensate Plaintiffs for their living expenses to maintain their usual standard of living is ongoing. Complaint ¶¶ 8, 39. Further, Plaintiffs have alleged that Defendant is insisting that they return to their home even before Defendant's investigation is complete. *Id.* ¶ 32. The Court also finds that to the extent that Defendant "vigorously contest[s]" Plaintiffs' ability to establish their remaining claims, their declaratory relief might be their only remedy if Defendant were to prevail on those challenges. *Brady v. Conseco, Inc.*, No. C 08-05746 SI, 2009 WL 2356201, at *7 (N.D. Cal. July 29, 2009).

Therefore, although the Court has discretion to dismiss duplicative claims for declaratory relief, it concludes that it would be premature to exercise such discretion at this early stage of the case. *Id.*

### 4. Whether Plaintiffs Have Stated a Claim for Negligence

Plaintiffs' claim for negligence is based on the theory that Defendant negligently failed to provide adequate limits across the coverages provided in the Policy. Complaint ¶¶ 74–77. " '[A]s a general proposition, an insurance agent does not have a duty to volunteer to an insured that the latter should procure additional or different insurance coverage.' " *Vulk v. State Farm Gen. Ins. Co.*, 69 Cal. App. 5th 243, 254 (2021) (quoting *Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916, 927 (1997)). There are exceptions to this rule, however, "when one of the following three things occurs: (1) the agent misrepresents the nature, extent or scope of the coverage being offered or provided; (2) there is a request or inquiry by the insured for a particular type or extent of coverage; or (3) the agent assumes an additional duty by either express agreement or by holding themself out as having expertise in a given field of insurance being sought by the insured." *Id.* (citation omitted).

Plaintiffs here have alleged facts sufficient to raise a plausible inference that the third exception applies. In particular, they allege in the Complaint that Defendant "promises and communicates by way of advertising and marketing communications, as well as its communications with its brokers that it expects and understands will be communicated to existing (renewing) and prospective customers, that it understands the problems associated with underinsurance and addresses those problems by conducting comprehensive physical inspections of its insured properties, and by updating those inspections over the life of a policy to ensure coverages are adequate in the event of losses of any variety." Complaint ¶ 62. Further, according to Plaintiffs, Defendant "promises and communicates" to prospective and existing customers that "it is a specialist and expert in properly and adequately insuring high value homes, which may be constructed using non-standard building techniques and include non-standard building materials and components, as well as the contents of such homes, which may include valuables not normally the subject of property insurance, for example, valuable collections of wine, books, archives, art, jewelry, and musical instruments." *Id.* ¶ 66. Plaintiffs allege that they relied on those

representations when they purchased and subsequently renewed their Chubb Masterpiece Policy, which covered the Property at the time of the Glass Fire. *Id.* ¶ 67. Plaintiffs further allege that by its conduct, Defendant "assumed duties beyond those normally attributable to a property insurer" and that it breached those duties by failing to afford sufficient coverage for repairs to and replacement of the Property and its contents, among other coverages, in the event of a catastrophic loss such as the Glass Fire." *Id.* ¶¶ 74-75. These allegations are sufficient to state a claim for negligence against Defendant.

### D. Whether the Court Should Strike Plaintiffs' Request for Punitive Damages and Attorneys' Fees

#### 1. Punitive Damages

To recover punitive damages, under California Civil Code § 3294, plaintiff must "prove[] by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). As a preliminary matter, Defendant's request to strike Plaintiffs' prayer for punitive damages is procedurally improper as "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010). Rather, the proper vehicle for such a challenge is a motion to dismiss under Rule 12(b)(6) or a motion for summary judgment. *Id.* Therefore, the Court addresses Defendant's request under Rule 12(b)(6).

"[P]unitive damages may be recovered 'upon a proper showing of malice, fraud or oppression even though the tort incidentally involves a breach of contract.' " *Alberts v. Liberty Life Assurance Co. of Bos.*, 65 F. Supp. 3d 790, 795–96 (N.D. Cal. 2014) (quoting *Schroeder v. Auto Driveaway Co.*, 11 Cal. 3d 908, 921, 114 (1974)). "Plaintiff need not ultimately prove a subjective intent to harm, as 'malice in fact, sufficient to support an award of punitive damages . . . may be established by a showing that the defendant's wrongful conduct was wilful, intentional, and done in reckless disregard of its possible results'" *Id.* (quoting *Schroeder*, 11 Cal.3d at 922). Because Plaintiffs' claims do not sound in fraud, Defendant's assertion in the Motion that Plaintiffs' request for punitive damages is subject to the heightened pleading standard of Rule 9(b)

14

of the Federal Rules of Civil Procedure is incorrect. As is expressly stated in Rule 9(b), "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Finally, Plaintiffs have included allegations in the Complaint that raise a plausible inference of malice and/or oppression. These include their allegations that Defendant has not diligently investigated, ignored test results of Plaintiffs' investigators, refused to disclose some of its own test results to Plaintiffs, maintained that no repairs to the main house are necessary even though their own investigation reveals extensive damage, delayed up to a year in making payments that it had approved, and refused to approve extension of Plaintiffs' current lease. Therefore, the Court finds that Plaintiffs' prayer for punitive damages is adequately alleged.

### 2. Fees and Costs

Plaintiffs seek attorneys' fees and costs under *Brandt v. Superior Court*, which provides that "[w]hen an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense." 27 Cal. 3d 813, 817 (1985). For the same reasons Plaintiffs' allegations as to punitive damages are adequate the Court also finds that Plaintiffs have adequately alleged that they are entitled to attorneys' fees and costs under *Brandt*.

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: March 29, 2022

JOSEPH C. SPERO
Chief Magistrate Judge