UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS POLLOCK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>Defendant. | Case No.  21-cv-09975-JCS<br><br>**ORDER DENYING MOTION TO DISQUALIFY PLAINTIFFS' APPRAISER AND STAY SELECTION OF UMPIRE PENDING OUTCOME OF MOTION TO DISQUALIFY APPRAISER**<br><br>Re: Dkt. No. 67 |

## I.      INTRODUCTION

Presently before the Court is a Motion to Disqualify Plaintiffs' Appraiser and Stay Selection of Umpire Pending Outcome of Motion to Disqualify Appraiser ("Motion").  The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the motion hearing set for October 11, 2022 at 10:00 a.m. pursuant to Civil Local Rule 7-1(b).  For the reasons stated below, the Motion is DENIED.[1]

## II.      BACKGROUND

This case involves a claim for coverage under a fire insurance policy ("Policy") issued by Federal Insurance Company ("Federal") to Thomas Pollock and Eileen Tabios (collectively, "Homeowners").  The Policy contains the following appraisal provision:

> **APPRAISALS:** If you or we fail to agree on the amount of loss, you or we may demand an appraisal of the loss. Each party will select a competent, independent appraiser within 20 days after receiving written request from the other. The two appraisers will select a third, competent appraiser. If they cannot agree on a third appraiser within 15 days, you or we may request that the selection be made by a judge of a court having jurisdiction. Written agreement signed by any two of the three appraisers shall set the amount of the loss. However, the

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

> maximum amount we will pay for a loss is the applicable amount of coverage even if the amount of the loss is determined to be greater by appraisal. Each appraiser will be paid by the party selecting the appraiser. Other expenses of the appraisal and the compensation of the third appraiser shall be shared equally by you and us. We do not waive our rights under this policy by agreeing to an appraisal.

Dkt. 27-2 (Policy) at 1. On July 14, 2022, the Court granted Homeowners' motion to compel an appraisal under this provision and directed that each side would select a party appraiser within 20 days; at the request of the parties (and consistent with the terms of the appraisal provision quoted above) the Court also set up a process for the parties to seek intervention from the Court if their party appraisers were unable to agree on the third appraiser, or "umpire." Dkt. 47 at 22.

The party appraisers were unable to agree on an umpire and both sides submitted letter briefs addressing the selection of an umpire on August 26, 2022. *See* dkt. 61, 62. On the same date, Federal brought the instant motion asking the Court to disqualify Homeowners' party appraiser, Robert Bresee, on the basis of bias, and stay the selection of the umpire until after the Court has decided the Motion. Homeowners contend the Court does not have the authority – either under the Federal Arbitration Act (FAA) or the terms of the Policy – to remove their party appraiser. They further assert that Mr. Bresee is a "competent, independent" appraiser under the contract and meets the requirements of California law with respect to impartiality.

## III.   WHETHER THE COURT HAS AUTHORITY TO DISQUALIFY HOMEOWNERS' APPRAISER

### A.   Legal Standards

Because "the basic purpose of arbitration is the speedy disposition of disputes without the expense and delay of extended court proceedings[,]" "judicial review prior to the rendition of a final arbitration award should be indulged, if at all, only in the most extreme cases." *Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973). In *In re Sussex*, the Ninth Circuit found that a district court's order granting a motion to disqualify an arbitrator "mid-arbitration" based on "evident partiality" did not meet the "extreme case" threshold and that it was clear error for the district court to intervene. 781 F.3d 1065, 1073 (9th Cir. 2015). In reaching that conclusion, the court approved the view of the Seventh Circuit (which the court found to be the majority view) that "'[r]eview [of an arbitration proceeding] comes at the beginning or the end,

2

but not in the middle.'" *Id.* (quoting *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011)).  The court went on to hold that "[t]his rule applies with equal force to claims of arbitrator partiality," citing *Smith v. Am. Arb. Ass'n, Inc.*, for its holding that "[t]he time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered."  *Id.* (citing 233 F.3d 502, 506 (7th Cir. 2000)).

### B.    Contentions of the Parties

Homeowners argue that under the case authority discussed above, Federal has not demonstrated that this is an extreme case that warrants court intervention under *Aerojet* and *In re Sussex.*  Opposition at 5-6.  They point to a district court case involving circumstances similar to those in this case in which the court denied a motion to disqualify a party appraiser on the basis of bias, finding that under *Aerojet* and *In re Sussex,* there were no extreme circumstances that justified intervening on this basis before the arbitration was completed.  *Id.* at 6-7 (citing *Queen's Med. Ctr. v. Travelers Cas. & Sur. Co. of Am.*, No. CV 17-00361 JMS-RLP, 2018 WL 1719703, at *7 (D. Haw. Apr. 9, 2018)).  They further contend that "courts addressing disqualification efforts outside the ambit of the FAA have held that absent express contract language permitting intervention, a court still has no power to disqualify a party-appraiser.  *Id.* (citing *Owners Ass'n of the Bella Vista Villas, Inc. v. Owners Ins. Co.*, No. 16-CV-1018-WJM-NYW, 2017 WL 6054887, at *7 (D. Colo. Dec. 7, 2017)).

Federal, on the other hand, points to *Gahn v. Columbia Cas. Ins. Co.*, No. CV 03-630 TUC DCB, 2005 WL 8160591, at *1 (D. Ariz. Nov. 29, 2005), in support of its assertion that it is appropriate for this Court to intervene to disqualify Homeowners' appraiser.  Reply at 6-7.  Federal also argues that the authority Homeowners rely upon, including *In re Sussex*, is distinguishable because: 1) none of the cited cases involved a "mid-coverage-litigation appraisal proceeding"; 2) the agreements to arbitrate in *In re Sussex* and *Queen's Medical* did not include any contractually imposed neutrality standards for party appraisers; and 3) the motions to disqualify in *In re Sussex* and *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F.Supp.2d 926 (N.D. Cal. 2003) were brought after the arbitration was "well underway."  *Id.* at 7-10.

United States District Court
Northern District of California

**C.      Discussion**

The crux of the dispute between the parties on the question of whether this Court has authority to rule on Federal's disqualification motion is whether the very limited authority to intervene in an arbitration proceeding that has been recognized by the Ninth Circuit in *Aerojet* and *In re Sussex*, requiring "extreme" circumstances, applies to this case or if, instead, the contractual provision in the Policy governing the appraisal process somehow expands that authority. The Court concludes that extreme circumstances are required to justify intervention in the parties' arbitration in connection with Federal's motion to disqualify and that Federal has not demonstrated that they exist here.

Federal relies heavily on *Gahn v. Columbia Cas. Ins. Co.*, No. CV 03-630 TUC DCB, 2005 WL 8160591, at *1 (D. Ariz. Nov. 29, 2005), to argue that the Court has authority to rule on its disqualification motion by virtue of the fact that the parties' contract (the Policy) requires that the party appraisers must be "competent" and "independent." In *Gahn*, the court entertained a party's challenge to the other side's appraiser where the parties' agreement to arbitrate contained a contractual provision similar to the one in this case, requiring that each side select a "competent and impartial appraiser" and providing that those appraisers would select a neutral umpire. 2005 WL 8160591, at *1. The court, which had previously found that the case was subject to arbitration pursuant to the FAA based on the appraisal provision in the parties' agreement, found that the plaintiff had violated his contractual obligation to select a "competent and independent" appraiser and therefore granted a motion to disqualify the party arbitrator. 2005 WL 8160591, at *3. The *Gahn* court did not, however, address the question of whether it had authority to rule on the disqualification motion, appearing to assume that it did. Although *Gahn* predates *In re Sussex*, the Ninth Circuit had already held in *Aerojet* that under the FAA courts should not intervene in arbitration except under extreme circumstances, but the *Gahn* court did not address whether that standard applied.

In contrast, in *Queen's Medical*, a more recent case that addresses whether the court had authority to rule on a motion to disqualify a party appraiser, the court found that under the standard set in *Aerojet* and *In re Sussex*, it was inappropriate to rule on one side's objection to the

other side's party appraiser prior to the rendition of a final arbitration award. 2018 WL 1719703, at *5-7. There, the insurance company objected on the basis that the party appraiser selected by the insured had a disqualifying conflict and argued that it had not agreed to arbitration that involved an appraiser who was not neutral. *Id.* at *3. The court addressed the applicable standard in the Ninth Circuit at length, explaining:

> Courts have consistently held that they lack the power to disqualify an arbitrator before the arbitration is complete or while it is pending. *See Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 490 (5th Cir. 2002) ("[T]here is no authorization under the FAA's express terms for a court to remove an arbitrator from service. Rather, even where arbitrator bias is at issue, the FAA does not provide for removal of an arbitrator from service prior to an award, but only for potential vacatur of any award."); *Smith v. Am. Arbitration Ass'n, Inc.*, 233 F.3d 502, 506 (7th Cir. 2000) ("The time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered."); *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) ("Although the FAA provides that a court can vacate an award '[w]here there was evident partiality or corruption in the arbitrators,' it does not provide for pre-award removal of an arbitrator. Thus, an agreement to arbitrate before a particular arbitrator may not be disturbed, unless the agreement is subject to attack under general contract principles 'as exist at law or in equity.' ") (internal citations omitted); *Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842, 843-44 (8th Cir. 1988) ("Appellants cannot obtain judicial review of the arbitrators' decisions about the qualifications of the arbitrators or other matters prior to the making of an award."); *John Hancock Life Ins. Co. v. Emp'rs Reassurance Corp.*, 2016 WL 3460316, at *3 (D. Mass. June 21, 2016) ("The FAA contains no provision expressly granting courts the authority to remove a party-appointed arbitrator prior to the conclusion of the arbitration."); *Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*, 2010 WL 431592, at *3 (N.D. Ill. Feb. 1, 2010) (refusing to disqualify allegedly biased arbitrator, even though the arbitration agreement required disinterested arbitrators, because issues of bias or qualification can only be challenged post-award); *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 935 (N.D. Cal. 2003) ("[C]ourts have consistently held that courts do not have the power under the FAA to disqualify an arbitrator while proceedings are pending."); *Crim v. Pepperidge Farm, Inc.*, 32 F. Supp. 2d 326, 331 (D. Md. 1999) ("Absent extraordinary circumstances under which the Court's equitable powers could be invoked, such as overt misconduct on the part of the arbitrator, the remedy available to a party who suspects that an arbitrator will be impartial is to seek to vacate the award after it is rendered.").

> The court recognizes, however, that the rule in the Ninth Circuit appears to be slightly different. *Aerojet-General Corp. v. Am. Arbitration Ass'n*, 478 F.2d 248 (9th Cir. 1973), stated that "judicial review prior to the rendition of a final arbitration award should be indulged, if at all, only in the most extreme cases." *Id.* at 251. In so

1

2

3

4

5

6

> ruling, *Aerojet-General* noted the considerations that weighed heavily against a mid-arbitration intervention, explaining that "[t]he basic purpose of arbitration is the speedy disposition of disputes without the expense and delay of extended court proceedings," and that "[t]o permit what is in effect an appeal of an interlocutory ruling of the arbitrator would frustrate this purpose." *In re Sussex*, 781 F.3d 1065, 1072 (9th Cir. 2015) (quoting *Aerojet-General*, 478 F.2d at 251). *Aerojet-General* also recognized "the remote possibility of an extreme case that could cause 'severe irreparable injury' from an error that 'cannot effectively be remedied on appeal from the final judgment' and that would result in 'manifest injustice.' " *Id.* at 1072-73 (quoting *Aerojet-General*, 478 F.2d at 251).

7   *Id.* at *6-7. The court in *Queen's Medical* went on to hold that it would not "determine, pre-

8   award, whether [the party appraiser] [met] the actual bias prong of the 'evident partiality'

9   standard" of the FAA, *see* 9 U.S.C. § 10(a)(2), and that the showing of the insurance company fell

10   "well short" of what is required to constitute an extreme case that would justify court intervention.

11   *Id.* at *7. The Court finds that the reasoning of *Queen's Medical* is persuasive and that its analysis

12   is more consistent with the requirements established in the Ninth Circuit for justifying a court's

13   exercise of authority as to a motion to disqualify a party appraiser than the analysis in *Gahn*.

14   Federal attempts to distinguish *Queen's Medical* on the grounds that the agreement to

15   arbitrate in that case did not specify that the party appraiser had to be neutral, in contrast to the

16   appraisal provision here. Reply at 8. But Federal does not explain why this distinction matters

17   and the Court finds that it does not. In *Queen's Medical*, the parties agreed to "arbitrate their

18   dispute in Hawaii on an expedited basis before a panel of three arbitrators with a decision deadline

19   of May 31, 2017." *Id.* at *4. The insurance company subsequently sought to void the arbitration

20   agreement on the basis that it did not contain essential terms, pointing specifically to its failure to

21   "set forth whether the parties could select non-neutral arbitrators[,]" but the court disagreed,

22   holding that "having determined that the FAA applies, the standard for neutrality is set forth in 9

23   U.S.C. § 10(a)(2)[,]" which allows a court to "vacate an arbitration award 'where there was

24   evident partiality . . . in the arbitrators.' " *Id.* at *5 (quoting 9 U.S.C. § 10(a)(2)). In other words,

25   the court read into the contract the missing term governing impartiality based on the FAA's

26   requirements.

27   There is nothing in the reasoning of *Queen's Medical* that suggests that the court's

28   conclusion as to whether it had the authority to disqualify the party appraiser in that case was

United States District Court
Northern District of California

6

based on the fact that the impartiality requirement was read into the contract rather than specifically included in the arbitration provision. Moreover, the *Queen's Medical* court's reliance on *Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co*., 2010 WL 431592, at *3 (N.D. Ill. Feb. 1, 2010), supports the opposite conclusion. *Id.* at *6. According to the *Queen's Medical* court, in *Trustmark* the court "refus[ed] to disqualify allegedly biased arbitrator, *even though the arbitration agreement required disinterested arbitrators*, because issues of bias or qualification can only be challenged post-award." *Id.* (emphasis added).

The Court also rejects Federal's attempt to avoid the cases cited by Homeowners, including *Queen's Medical*, on the basis that they did not involve "a mid-coverage-litigation appraisal proceeding." Reply at 7. According to Federal, "[t]hat distinction is important, because most arbitral forums outside the appraisal context come with a set of rules and procedures for arbitrator disclosures and disqualification." *Id.* "The procedural rules that govern an arbitration (or in this case, an appraisal) are generally a matter of the parties' contract, as supplemented by the appropriate federal or state default rules." *Fed. Ins. Co. v. Anderson*, No. 18-CV-06920-JST, 2019 WL 8128570, at *6 (N.D. Cal. Sept. 27, 2019). To the extent Federal suggests that the absence of specific procedural rules in the appraisal provision of the Policy justifies the Court's intervention to disqualify Homeowners' appraiser, it points to no authority to support that argument, which (incorrectly) assumes that the Court has "free-floating authority to fill any procedural gaps rather than leaving those decisions to the arbitrator or appraisers." *Id.*

Finally, the Court is not persuaded by Federal's argument that *In re Sussex* does not apply because in that case arbitration was "well underway at the point when a party sought court intervention." Reply at 8. While Federal is correct that the motion to disqualify in *In re Sussex* was brought several years after the arbitration began, the reasoning of the court in that case points to the conclusion that it would have reached the same result even if the motion to disqualify had been brought at the beginning of the arbitration. In *In re Sussex*, the court explained that a court's authority with respect to arbitration "bookend[s]" the arbitration and that once the district court enforces an arbitration agreement by ordering the parties to arbitrate their dispute under the FAA, its "its involvement ordinarily stops at that point." 781 F.3d at 1071. That reasoning points to the

1    conclusion that where, as here, the parties have already been ordered to arbitration, it is not

2    appropriate for the Court to continue its involvement by ruling on a motion to disqualify a party

3    appraiser in the absence of extreme circumstances.

4            Further, to the extent *In re Sussex* refers to "ongoing arbitration" in discussing the

5    circumstances under which courts should (or should not) intervene, *see, e.g.,* 781 F.3d at 1073, the

6    Court does not find this language to suggest that a more permissive approach to court involvement

7    should be taken with respect to claims of arbitrator bias brought at the outset of arbitration.  That

8    conclusion is contradicted by the court's reliance on *Smith v. Am. Arb. Ass'n, Inc.*, 233 F.3d 502,

9    506 (7th Cir. 2000) in support of its holding.  In *Smith*, the plaintiff sought to enjoin an arbitration

10   proceeding that had not yet begun from going forward based on the other side's choice of

11   arbitrator but the court found that her challenge was premature, holding that "[t]he time to

12   challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed

13   and an award rendered."  *Smith*, 233 F.3d at 506.  The Ninth Circuit cited this specific holding

14   with approval in *In re Sussex*.  Therefore, the Court reads *In re Sussex* as holding that courts

15   should entertain a motion to disqualify a party arbitrator after they have ordered the parties to

16   arbitration only in extreme circumstances.[2]

17           Federal has not even attempted to argue that the stringent standard of *Aerojet* and *In re*

18   *Sussex* is met under the facts here and the record before the Court strongly supports the opposite

19   conclusion.  To the extent that Federal questions Mr. Bresee's impartiality based on his past work

20   with the firm that represents Homeowners, the appropriate time for bringing a challenge on that

21   basis is when the arbitration is complete.

22

23

24

25
_____

26   [2] The Court notes that in *In re Sussex*, the Ninth Circuit did not address whether the parties to an
     arbitration agreement can carve out a specific issue where court involvement is permissible, such
27   as resolving a dispute related to the selection of the umpire.  As the parties do not dispute that the
     Policy in this case provides for such involvement by the Court and do not challenge the Court's
28   authority to resolve their dispute in that regard, the Court limits its holding in this Order to
     Federal's challenge to Homeowners' party appraiser.

**IV.    CONCLUSION**

   For the reasons stated above, the Motion is DENIED. The parties' dispute regarding selection of the umpire will be addressed in a separate order.

   **IT IS SO ORDERED.**

Dated:  September 30, 2022

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

9