UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS POLLOCK, et al., | Case No. 21-cv-09975-JCS |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT** |
| FEDERAL INSURANCE COMPANY, | |
| Defendant. | Re: Dkt. No. 158 |

## I.      INTRODUCTION

Presently before the Court is Plaintiffs' Motion for Leave to File First Amended and Supplemental Complaint ("Motion"). The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the motion hearing set for February 12, 2025 pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Motion is GRANTED.[1]

## II.      BACKGROUND[2]

Plaintiffs brought this action on December 23, 2021. At the outset of the case, the Court set a deadline for amended pleadings of June 1, 2022. On July 14, 2022, the Court granted Plaintiffs' motion to compel an appraisal and a stay pending completion of the appraisal was entered on August 9, 2022. The arbitration panel issued its appraisal award on March 28, 2024 and Federal subsequently brought a motion to vacate the award. On November 5, 2024, the court granted in part and denied in part Federal's motion to vacate, finding that while the panel did not

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).
[2] A detailed description of the factual and procedural background of this case can be found in the Court's November 5, 2024 Order (dkt. no. 134).

United States District Court
Northern District of California

United States District Court
Northern District of California

act improperly in appraising the loss with respect to manmade structures, the disputes related to causation were for the Court (or jury) and remained to be decided. The Court also vacated the award as to the costs listed in Exhibit B.  On December 29, 2024, Plaintiffs submitted a written demand to Federal requesting immediate payment of the affirmed portion of the award plus applicable interest but Federal has refused to pay this amount. Dkt. mo. 158-1 (proposed amended complaint) ¶¶ 44-45.

In the meantime, as the January 6, 2025 fact discovery cut-off approached, numerous discovery disputes arose and the parties filed several joint discovery letters.  The Court issued a series of orders addressing the parties' disputes. *See* dkt. nos. 153, 159, 172, 173.  Among other things, the Court denied Plaintiffs' request for in camera review of communications involving Federal's outside counsel, Eric Freed, that were withheld on the basis of attorney-client privilege, finding based on the evidence cited in the parties' joint letter that the dominant purpose of his relationship with Federal was to provide legal advice. Dkt. no. 159. It also concluded that Federal had improperly withheld information relating to its loss reserves, agreeing with the court in *Fay Ave. Properties, LLC v. Travelers Prop. Cas. Co. of Am.*, No. 3:11-CV-02389-GPC, 2014 WL 2738682 (S.D. Cal. June 17, 2014), that loss reserve information may be relevant to an insurer's bad faith in a first-party property insurance case.  Dkt. no. 172 at pp. 4-5.

In the instant Motion, Plaintiffs seek leave to amend their complaint to: 1) add factual allegations relating to Federal's recent failure to pay the appraisal award after Plaintiffs' written demand for payment on December 29, 2024; 2) expand the allegations supporting Plaintiffs' claim for breach of the covenant of good faith and fair dealing to include conduct that occurred after the complaint was filed;  3) expand the allegations supporting Plaintiffs' negligence claim to include allegations relating to Federal's alleged unreasonableness with respect to its loss reserve practices, resulting in delays in processing their claim; and 4) add a claim for Financial Elder Abuse under California Welfare and Institutions Code § 15610.30 based on the fact that Plaintiff Thomas Pollack is now 65 years old and allegations that Federal failed to pay the appraisal award after the court refused to vacate the award, deliberately delayed payment "through protracted litigation and procedural maneuvers—including the failed prosecution of counterclaim alleging bad faith—

United States District Court
Northern District of California

designed to exhaust Mr. Pollock's financial resources and emotional resolve[,]" and "willfully [withheld] property belonging to Mr. Pollock with intent to defraud, oppress, and frustrate his rights under the insurance policy." *See generally* dkt. no. 158-1 (proposed First Amended and Supplemental Complaint) ("proposed Amended Complaint").   Plaintiffs contend there is good cause under Rule 16(b) of the Federal Rules of Civil Procedure to permit amendment, even though the deadline to amend has passed.  They further assert that permitting amendment is in the interest of justice under Rule 15(a) of the Federal Rules of Civil Procedure.

Federal opposes the motion, arguing that Plaintiffs should not be permitted to amend their complaint because they were not diligent in seeking leave to do so.  Federal further contends the proposed amendments should not be permitted because they are futile and will result in prejudice to Federal.

## III.    ANALYSIS

### A.    Legal Standards

Under Rule 16 of the Federal Rules of Civil Procedure, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).   The good cause inquiry focuses primarily on "the diligence of the party seeking the amendment."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).   "The decision to modify a scheduling order is within the broad discretion of the district court."  *Benchmark Young Adult Sch., Inc. v. Launchworks Life Servs.*, LLC, No. 12-CV-02953-BAS BGS, 2014 WL 3014720, at *2 (S.D. Cal. July 3, 2014) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d at 607–608). Once the court has found that there is good cause under Rule 16, it proceeds to address the question of whether amendment of the complaint is appropriate under Rule 15(a) of the Federal Rules of Civil Procedure.  *Id.* at *3 ("If . . . the movant clears the Rule 16 bar, the Court proceeds to considering the motion [for leave to amend] under the usual standard of Rule 15") (citation omitted).

Pursuant to Rule 15(a), a party may amend a pleading once as a matter of course; subsequently, it may only amend after obtaining leave of the court, or by consent of the adverse party.  *See* Fed.R.Civ.P. 15(a).  Rule 15 advises the court that "leave shall be freely given when

justice so requires." Fed.R.Civ.P. 15(a)(2). "[T]his policy is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). These factors are referred to as the "*Fomen* factors." *Id.* The *Fomen* factors "are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citations omitted). Prejudice, on the other hand, is the weightiest and most important of the *Fomen* factors. *Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d at 1117 (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

**B.    Whether there is Good Cause to Modify the Scheduling Order Under Rule 16(b)**

Federal argues that the Court should deny the Motion under Rule 16(b) on the basis that Plaintiffs were not diligent in seeking leave to amend. Dkt. no. 175 at p. 3. In particular, it contends Plaintiffs "have been on notice for months—if not years—of the underlying facts that supposedly inspired amendment, and they sat on their hands and waited until the close of fact discovery to seek the requisite leave." *Id.* The Court finds that Plaintiffs were sufficiently diligent to meet the threshold requirement of good cause.

There is only one completely new claim in the proposed amended complaint, for elder abuse. That claim is based, at least in part, on Federal's refusal to pay the appraisal award, even *after* the Court issued an order refusing to vacate the award (except a small portion of the award listed in Exhibit B) and the fact that Mr. Pollack turned 65 (the minimum age to assert such a claim) in 2024. Federal contends the claim could have been brought long ago as it informed Plaintiffs in April 2024 that it would "be making no payments to the Insured of the amounts set forth on the appraisal award." *Id.* (citing Godesky Decl. ¶ 2). Federal also points out that Mr. Pollack turned 65 just a month later. *Id.* However, Federal's argument overlooks the fact that

4

United States District Court
Northern District of California

until November 5, 2024, there was a pending motion brought by Federal to vacate the award. The focus of Plaintiffs' elder abuse claim is their allegation that Federal's *continued* refusal to pay the award after the Court's ruling reflects a pattern of intentional conduct aimed at exploiting Mr. Pollack's elder status. As Plaintiffs sought to add this claim (and the corresponding factual allegations) within a short period after the Court's November 5 ruling, the Court finds that they were sufficiently diligent to meet the good cause requirement as to these proposed amendments.

As to the additional allegations Plaintiffs seek to add to their claim for breach of the covenant of good faith and fair dealing, these relate to conduct that occurred after the complaint was filed and largely after the deadline to amend had already passed. Similarly, the new allegations related to loss reserves that Plaintiffs seek to add to their negligence claim appear to be based, in part, on discovery that Federal first produced just days ago, in response to the Court's discovery order, after Federal refused to produce information on loss reserves throughout the fact discovery period. The Court therefore finds that Plaintiffs acted with sufficient diligence to meet the good cause requirement as to these amendments as well. Therefore, the Court proceeds to the Rule 15(a) inquiry.

### C.    Whether Leave to Amend is in the Interest of Justice Under Rule 15(a)

In addition to arguing that the proposed amendments should not be permitted because Plaintiffs unduly delayed in seeking leave to amend, Federal argues that it will be prejudiced if Plaintiffs are permitted to amend their complaint at this stage of the case and that amendment is, in any event, futile. The Court disagrees on both counts.

#### 1.    Prejudice

Federal's argument that it will be prejudiced consists of a single sentence in which it asserts that it "would be prejudiced if Plaintiffs were permitted to strategically change their case at the close of fact discovery, thereby ensuring (among other things) that Federal had no opportunity to depose Plaintiffs with a full understanding of the causes of action at issue in this case." Dkt. no. 175 (Opposition) at p. 13. The Court finds this assertion unpersuasive for several reasons.

First, Federal does not point to any specific witnesses or subject matter as to which it would need additional discovery if Plaintiffs were permitted to amend their complaint. Rather, its

argument is entirely conclusory.

Second, Federal received a copy of Plaintiffs' proposed Amended Complaint on January 2, 2025, four days before Mr. Pollack's deposition. Dkt. no. 176 (Reply) at 5; dkt. no. 176-1 (Bolender Decl.) ¶ 10. Thus, Federal was on notice of the allegations Plaintiffs sought to add to their complaint, including the new claim by Mr. Pollack for elder abuse, and had the opportunity to depose him as to the amendments. Likewise, it is undisputed that Federal was continuing to conduct fact depositions throughout January 2025 and therefore could have deposed other witnesses as to the amendments as well.

Third, Federal has pointed to no documents or categories of documents related to the proposed amendments that it would have requested during fact discovery had the complaint been amended sooner and that it has not already obtained.

Finally, the proposed amendments to the existing claims do not significantly expand the theories underpinning those claims and indeed, Plaintiffs are likely correct that evidence related to these theories would be admissible on summary judgment or at trial based on the allegations in the original complaint.

In sum, the Court finds that the prejudice to Federal of allowing the proposed amendments is minimal and therefore this factor favors permitting Plaintiffs to amend.

### 2. Futility

A proposed amendment is futile if it would not survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Miller v. Facebook, Inc.*, No. C 10–00264 WHA, 2010 WL 2198204, at *3 (N.D. Cal. May 28, 2010). In determining whether a claim is sufficiently pled under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

United States District Court
Northern District of California

6

of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

a. Financial Elder Abuse

Plaintiffs have asserted only one new claim in their proposed Amended Complaint, for financial elder abuse, and the Court finds that it is adequately pled under the standards set forth above. Under California law, an "elder" is defined as anyone residing in California aged 65 or older. Cal. Welf. & Inst. Code §§ 15610.27. Financial elder abuse "occurs when a person or entity . . . [t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder . . . for a wrongful use or with intent to defraud, or both," or assists in doing so. Cal. Welf. & Inst. Code §§ 15160.30(a)(1)-(2). "In the context of a deprivation of property due an elder under an insurance contract, the plaintiff must show more than an incorrect denial of policy benefits." *Henley v. Safeco Ins. Co. of Am.*, 2022 WL 2528548-RS, *3 (N.D. Cal. Jul. 7, 2022) (citation and quotations omitted); see also *Paslay v. State Farm. Gen. Ins. Co*., 248 Cal. App. 4th 639, 658 (2016) (stating that the statute "imposes a requirement in addition to the mere breach of the contract term relating to the property, as the existence of such a breach ordinarily does not hinge on the state of mind or objective reasonableness of the breaching party's conduct."). "The viability of financial elder abuse claims that involve denial of benefits often turns on whether a plaintiff has sufficiently alleged that the defendant acted in bad faith." *Potovsky v. Lincoln Benefit Life*, No. 23-CV-02235-WHO, 2023 WL 8461171, at *11 (N.D. Cal. Dec. 6, 2023), aff'd sub nom. *Potovsky v. Lincoln Benefit Life Co*., No. 23-4130, 2024 WL 5289187 (9th Cir. Jan. 7, 2025) (citing *Paslay*, 248 Cal. App. 4th at 658-59; *Crawford v. Continental Cas. Ins. Co.*, 2014 WL 10988334, at *2 (C.D. Cal. July 24, 2014)).

Federal asserts that the claim fails because the appraisal award does not constitute "property" for the purposes of financial elder abuse, citing cases it contends hold that "an appraisal panel has no authority to make a coverage determination and that an award does not create any entitlement to policy benefits." Dkt. no. 175 at 7 (citing *Kacha v. Allstate Ins. Co*., 140 Cal. App.

4th 1023, 1036 (2006); (*Turnstone Consulting Corp. v. U.S. Fid. & Guar. Co*., 2007 WL 1430033, at *2 (N.D. Cal. May 15, 2007); *Jefferson Ins. Co. v. Superior Ct*., 3 Cal. 3d 398, 403 (1970)). However, insurance proceeds to which a beneficiary is entitled *do* constitute personal property for the purposes of financial elder abuse.  *See Crawford v. Cont'l Cas. Ins. Co*., No. SACV1400968CJCJCGX, 2014 WL 10988334, at *2 (C.D. Cal. July 24, 2014) (citing broad language of Elder Abuse Act and finding that plaintiff could state a claim for elder abuse based on bad faith denial of insurance benefits).  As Plaintiffs allege that Federal has, in bad faith, engaged in a variety of delaying strategies in order to retain those proceeds, they have adequately alleged a claim for elder abuse.  Plaintiffs' allegations relating to Federal's refusal to pay the appraisal award are simply an example of conduct that Plaintiffs contend reflects bad faith, not an assertion that the appraisal award amounts to a coverage determination.  Therefore, the Court rejects Federal's argument that the proposed amendment to add a claim for financial elder abuse is futile.

As to Plaintiffs' claims for breach of the covenant of good faith and fair dealing and negligence, the proposed amendments merely expand upon these claims, which the Court has already found are adequately pled.  *See* dkt. no. 25 at 10, 13-14.  Furthermore, while Federal argues that these new allegations are premised on flawed legal theories, the Court finds that they are sufficient as a matter of pleading.

b.  Breach of the Covenant of Good Faith and Fair Dealing

In paragraph 61 of the proposed Amended Complaint, Plaintiffs list the following examples of Federal's alleged bad faith conduct:

a) Opposing and delaying Homeowners' successful efforts to enforce the policy's appraisal provision, despite unambiguous policy language mandating appraisal for disputed claims, in violation of California Insurance Code Section 790.03(h)(6), (10) and Fair Claims Settlement Practices Regulations, Title 10 § 2695.7(b)(1).

b) Causing repeated delays and raising baseless objections during the appraisal process, obstructing Homeowners' ability to obtain a timely resolution, in violation of Title 10, § 2695.7(b)(1) and Section 790.03(h)(2).

c) Issuing a coverage disclaimer nearly four years after the Glass Fire and only at the conclusion of the appraisal process, in violation of California Code of Regulations Title 10, § 2695.7(b)(1), which requires a coverage determination within 40 days of receiving proof of claim.

    d) Taking multiple days of lengthy examinations under oath without reasonable basis in order to harass and intimidate Homeowners.

    e) Promising superior claims service while deliberately creating an adversarial relationship, including improperly using an attorney as a de facto adjuster in order to assert unfounded privilege claims and shield its investigation from disclosure, external oversight and judicial scrutiny.

    f) Falsely asserting that exclusions applied to Homeowners' claims, despite the undisputed fact that the efficient proximate cause of Homeowners' loss was the Glass Fire, in violation of California Insurance Code Section 790.03(h)(1) and (h)(5), which require fair and equitable interpretation of policy provisions.

    g) Filing a baseless counterclaim against Homeowners to intimidate and distract from Chubb's wrongful conduct, further evidencing bad faith under Section 790.03(h)(6) and (h)(10).

    h) Engaging in litigation strategies designed to exhaust Homeowners' financial resources and coerce an unfavorable settlement, in violation of Section 790.03(h)(6), which prohibits unfair practices targeting insureds' financial vulnerabilities.

Dkt. no. 158-1 (Proposed Amended Complaint) ¶ 61.

    Federal asserts that the Court has already rejected Plaintiffs' allegation in subsection (e) that it improperly used an attorney as a de facto adjuster, citing the Court's ruling declining to review in camera or order production of communications between Federal and Eric Freed. *See* dkt. no. 175 (Opposition) at p. 11 (citing dkt. no. 159 at p. 2). The Court's discovery order, however, was based on a limited record and found only that the dominant purpose of Freed's relationship with Federal was to provide legal advice. The Court did not purport to make a binding factual finding as to whether Federal may have acted in bad faith in its use of Freed to conduct insurance adjuster tasks. Therefore, Plaintiffs are not barred from pursuing this legal theory on the basis of futility.

    Federal also contends the allegation in subsection (d), based on Federal's "lengthy" examination of Plaintiffs, fails because "exercising an express contractual right 'can *never* violate an implied covenant of good faith and fair dealing.'" *Id.* (citing *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 376 (1992) (emphasis added by Federal); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998) ("[A] party cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement.")). The cases Federal

United States District Court
Northern District of California

1  cites, however, merely stand for the proposition that "parties can contract explicitly to engage in

2  activities that might otherwise be forbidden by the implied covenant of good faith." *Solomon v. N.*

3  *Am. Life & Cas. Ins. Co.*, 151 F.3d at 1137.  Thus, in *Carma*, the California Supreme Court found

4  that a lease termination for financial gain did not reflect bad faith because the termination was

5  expressly permitted under the contract.  2 Cal. 4th at 376.  Similarly, in *Solomon*, the court found

6  that a unilateral termination of a life insurance policy did not constitute a breach of the covenant of

7  good faith and fair dealing because the termination was performed pursuant to the express terms of

8  the contract. 151 F.3d at 1137.

9        While there is no dispute that Federal was permitted under the Policy to examine Plaintiffs,

10  Federal has pointed to nothing in the Policy suggesting that that right permits examinations that

11  are unreasonably lengthy and are conducted with the intent to harass the insureds, as is alleged

12  here.  Thus, the cases cited above do not bar these allegations.  In fact, other courts have found

13  that an insurer may act in bad faith when it abuses the contractual right to investigate the insured.

14  *See, e.g., Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1281 (1994) (finding

15  sufficient evidence to support jury's finding of bad faith based, in part, on the timing of the EUO

16  and the manner in which it was conducted). Therefore, this alleged conduct is sufficient to support

17  an inference of bad faith.

18        Federal also asserts that under California's litigation privilege,  Plaintiffs may not base

19  their bad faith claim on the litigation strategies cited in subsections (a) (opposing Plaintiffs'

20  motion seeking an appraisal) and (g) (asserting a counterclaim for bad faith against Plaintiffs).

21  Dkt. no. 175 (Opposition) at p. 11.  According to Federal, "California courts have repeatedly held

22  that merely 'instituting litigation,' *i.e.*, filing a counterclaim, cannot be the basis for a bad-faith

23  claim." *Id.*  at 11-12 (citing *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666,

24  687 (2000) (bad faith based on litigation conduct requires something "beyond instituting

25  litigation"); *Scottsdale Ins. Co. v. Fineman*, 2021 WL 411360, at *10 n.7 (N.D. Cal. Feb. 5, 2021)

26  (rejecting claim that insurer acted in bad faith by filing lawsuit against insured "in light of the

27  overwhelming nationwide authority to the contrary")).

28        The Court rejects Federal's position, which ignores the "careful distinction [courts must

United States District Court
Northern District of California

draw] between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication." *White v. W. Title Ins. Co.*, 40 Cal. 3d 870, 888 (1985). In *White*, the California Supreme Court explained that while the former may be barred under California Civil Code section 47(b), codifying California's litigation privilege, the latter is not. *Id.* Thus, in *White*, the court found that settlement offers made in a judicial proceeding were admissible to prove that an insurer "was not evaluating and seeking to resolve [the plaintiff's insurance] claim fairly and in good faith." *Id.*; *see also Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 685 (2000) (recognizing that in *White*, "the court clarified that [the litigation] privilege does not shield all post litigation conduct by an insurer."); *Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal. App. 3d 169, 185 (1988) (observing that insurers should not avoid or delay policy liability with impunity "by assertion of a claim for rescission" and that "[w]here no valid ground for rescission exists, the threat or attempt to seek such relief may itself constitute . . . a breach of the covenant of good faith and fair dealing which is implied in the policy.").

Here, Plaintiffs' bad faith claim is not based squarely on Federal's litigation communications – whether Federal's bad faith counterclaim or its opposition to Plaintiffs' motion to compel an appraisal. Rather, the allegations in subsections (a) and (g) are offered as examples to show that Federal is not evaluating and seeking to resolve Plaintiffs' insurance claim in good faith. As California law permits the introduction of such evidence to establish bad faith, Federal's argument that these proposed amendment are futile and should not be permitted fails.

Finally, Federal's argument that the allegations in Paragraph 61 subsections (b) (asserting "baseless objections"), (f) ("[f]alsely asserting that exclusions applied to Homeowners' claims") and (h) (bad faith "litigation strategies") are too conclusory to state a claim is unpersuasive. As discussed above, the Court has already found that Plaintiffs' claim for breach of the covenant of good faith and fair dealing was adequately pled. While these new allegations do not contain a great deal of detail, the Court finds no reason to preclude Plaintiffs from including them in an amended complaint to better define the scope of the claim.

c. Negligence

In the proposed amended complaint, Plaintiffs seek to add allegations to their negligence claim that Federal acted unreasonably in evaluating and maintaining loss reserves for policies issued under its Masterpiece program, resulting in undue delay in payment of Plaintiffs' claim. Dkt. no. 158-1 ¶¶ 78-84. The proposed amendments allege that Federal "prioritized financial objectives over its statutory duties, failing to comply with California Insurance Code §§ 2051 and 2051.5 and California Code of Regulations, Title 10, § 2695.9(d)(1)-(3), which mandates full coverage of reasonable repair and rebuilding costs." *Id.* ¶ 80.

Federal argues that these loss-reserve allegations fail to state a claim and should not be permitted, relying on *American Protection Insurance Company v. Helm Concentrates, Inc*, 140 F.R.D. 448, 450 (E.D. Cal. 1991) in support of its assertion that "the law imposes on Federal no duty to Plaintiffs to maintain any particular reserves in connection with their specific insurance claim." Dkt. no. 175 (Opposition) at p. 9. As the Court explained in its recent discovery order, however, it does not find persuasive the holding in *American Protection Insurance* that insurers have no duty with respect to maintaining loss reserves under first party insurance policies. Dkt. no.172 at p. 4. Rather, the Court finds more persuasive the reasoning in *Fay Ave. Properties, LLC v. Travelers Prop. & Cas. Co. of Am.*, No. CIV. 11-2389-GPC WVG, 2014 WL 1333669, at *3 (S.D. Cal. Apr. 2, 2014), objections overruled sub nom. *Fay Ave. Properties, LLC v. Travelers Prop. Cas. Co. of Am.*, No. 3:11-CV-02389-GPC, 2014 WL 2738682 (S.D. Cal. June 17, 2014). In that case, the court found that failure to maintain adequate loss reserves was relevant to the question of whether the insurer acted in bad faith in connection with the plaintiff's claim. By extension, the reasoning in *Fay Ave.* supports the conclusion that failure to maintain adequate loss reserves is relevant to whether Federal acted unreasonably and was, therefore, negligent with respect to Plaintiffs' insurance claim in this case. Therefore, the Court rejects Federal's futility argument as to the proposed amendments addressing Federal's loss reserves.

**IV.     CONCLUSION**

For the reasons stated above, the Motion is GRANTED.  Plaintiffs are granted leave to file their proposed Amended Complaint.

**IT IS SO ORDERED.**


Dated:  January 30, 2025

_____

JOSEPH C. SPERO
United States Magistrate Judge