UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS POLLOCK, et al.,<br><br>           Plaintiffs,<br><br>    v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>          Defendant. | Case No.  21-cv-09975-JCS<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE AN AMENDED PLEADING**<br><br>Re: Dkt. No. 189 |

## I.     INTRODUCTION

Plaintiffs Thomas Pollock and Eileen Tabios bring this action against Defendant Federal Insurance Company ("Federal") seeking compensation under a homeowners' insurance policy issued by Federal on their property in St. Helena, California ("the Property"), which was damaged in the 2020 Glass Fire.  Following a Court-ordered appraisal, which culminated in the issuance of an appraisal award on March 29, 2024, and the Court's November 5, 2024 ruling declining Federal's request to vacate the award, the parties engaged in a flurry of fact discovery.  According to Federal's counsel, Plaintiffs produced 52,000 documents -- approximately 90% of all of the documents they produced in fact discovery – on or after November 1, 2024.  Godesky Decl., dkt. no. 189-2, ¶ 2.  Although the fact discovery cut-off was January 6, 2025, the parties, by stipulation, have continued to conduct depositions.

On January 3, 2025, Plaintiffs brought a Motion for Leave to File First Amended and Supplemental Complaint ("First Amended Complaint"), seeking leave to plead additional facts in support of their existing claims and to add a claim for Financial Elder Abuse under California Welfare and Institutions Code § 15610.30 based on the fact that Plaintiff Thomas Pollack is now 65 years old. Dkt. no 158.  The Court granted Plaintiffs' motion. Dkt. nos. 158, 179.  Presently

before the Court is Federal's Motion for Leave Under Federal Rules of Civil Procedure 15 and 16 To File an Amended Pleading ("Motion"), in which Federal seeks to assert in its answer to the First Amended Complaint new defenses and counterclaims for common-law fraud and breach of contract based on Plaintiffs' alleged violation of the misrepresentation and concealment provision in Plaintiffs' insurance policy.

The Court finds that the Motion is suitable for determination without oral argument. For the reasons stated below, the Motion is GRANTED.[1]

## II.    BACKGROUND

### A.    The Appraisal

On July 14, 2022, the Court ordered an appraisal "of the loss with respect to all manmade structures on the Property, but . . . exclude[ing] soil, landscaping, contents, and loss of use." Order Granting Motion to Compel Arbitration, dkt. no. 47, at 22. On March 29, 2024, the appraisal panel issued its award. Declaration of Kurt Brown in Support of Defendant Federal Insurance Company's Motion to Vacate Appraisal Award, dkt. no. 102-1 ("Brown Decl."), Ex. 16 ("Appraisal Award") at 1. The Appraisal Award concluded that the "[c]ost of repairs to return the Man-Made structures to their pre-loss condition as of the Date of Loss" was S32,122,214.15. *Id*. The panel found that the period of construction was 36 months and it valued "[i]nvestigation and pre-construction costs" at S1,048,215.43. *Id*. The Appraisal Award incorporates two exhibits; Exhibit A itemizes "value and loss to all man-made structures on the Property, excluding soil, landscaping, contents, and loss of use." *Id*. Exhibit B "[i]s the statement of awarded preconstruction and investigative costs."

The Appraisal Award states that "[a]ll values arc determined as of the date of loss, based upon evidence submitted by the parties and the Panel's site inspections." *Id*. It contains the following disclaimer:

> This appraisal award is made without consideration or any coverage issues, policy limits, deductible amounts, prior payments, non-covered items, or other provisions of the policy which might affect

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

the insurer's liability. This appraisal award docs not establish coverage or the insurer's liability to pay.

*Id.*

Federal subsequently brought a motion to vacate the Appraisal Award, dkt. no. 102 ("Motion to Vacate"), in which it argued, *inter alia*, that the Appraisal Award must be vacated under 9 U.S.C. § 10(a)(4) "because the panel exceeded the scope of its authority by improperly considering causation, by baselessly awarding over $1 million in investigation costs, and by determining a 36-month 'period of actual construction' without the power to do so." Order Granting in Part and Denying in Part Defendant's Motion to Vacate Appraisal Award and Granting Plaintiff's Motion to Dismiss, dkt. no. 134 ("Order re Motion to Vacate") (citing Motion to Vacate at 14, 20-24). The Court agreed with Federal as to the investigation cost award, which it vacated. *Id.* at 33-34. As to Federal's challenge based on the panel's causation findings, the Court concluded that "the panel did not act improperly to the extent that it appraised the loss as the '[c]ost of repairs to return the Man-Made structures to their pre-loss condition as of the Date of Loss[ ]' " because the award included disclaimers regarding coverage determinations consistent with California law. *Id.* at 29 (citing *Lee v. California Cap. Ins. Co.*, 237 Cal. App. 4th at 1170). Nonetheless, the Court found that "under California law, where there are disputes about causation of loss in the context of insurance coverage case, the parties are entitled to have those disputes resolved by the court." *Id.* Thus, the Court agreed with Federal that to the extent the Appraisal Award made any implicit findings regarding the disputed question of "what damage already existed versus what damage was caused by the" the Glass Fire, Federal is entitled to have that question decided in this proceeding by the Court or the jury. *Id.* at 12, 29. Finally, the Court rejected Federal's assertion that the 36-month period of reconstruction finding in the Appraisal Award exceeded the panel's authority. *Id.* at 32-33.

## B.   Federal's Proposed Answer To First Amended And Supplemental Complaint And Counterclaims

In its Proposed Answer to First Amended and Supplemental Complaint and Counterclaims ("Proposed Answer"), Federal asserts two new affirmative defenses and counterclaims: 1) an affirmative defense and counterclaim for breach of contract based on alleged breach of the

United States District Court
Northern District of California

insurance policy's concealment or misrepresentation provision;[2] and 2) a counterclaim for common law fraud.

Federal's new defenses and counterclaims are based on the following representations by Plaintiffs it contends were false at the time they were made: 1) a statement on October 26, 2020 by Mr. Pollack to Federal "that because of the scale and scope of [their] property, [the] restoration and/or reconstruction process will likely take between 1 and 3 years[,]" Proposed Answer, dkt. no. 189-2, p. 23 at ¶ 21 ("the October 26, 2020 Statement"); 2) two proofs of loss submitted under penalty of perjury in August 2021 claiming that the cost to demolish and rebuild would exceed $85 million and that Plaintiff's living expenses during the rebuilding period would exceed $15 million, *id.* pp. 25-26 at ¶ 34 ("the 2021 POLs"); and 3) statements in a September 27, 2021 letter from Plaintiffs' counsel to Federal that identified the "purported basis for their $100.3 million 'replacement value' insurance claim: testing and conclusions purportedly provided by an industrial hygienist at Kaizen Safety Solutions, Dawn Bolstad-Johnson."[3]  *Id.*, pp. 26-26 at  ¶¶ 37-38 ("the September 27 Letter");  *see also id.* ¶ 57 (listing statements that are the basis for Federal's proposed breach of contract counterclaim).

Federal alleges that at the time of the October 26, 2020 Statement, "no qualified expert had identified contamination or thermal damage from the Glass Fire" [ ]  [a]nd while Plaintiffs had

---

[2] In particular, the Policy states that "[w]e do not provide coverage if you or any covered person has intentionally concealed or misrepresented any material fact relating to this policy before or after the loss." Dkt. no. 1-1 (Policy) at ECF p. 100.
[3] Specifically, in the Proposed Answer, Federal alleges as follows:

> In their letter, Plaintiffs asserted that their $85.3 million in estimated "construction costs"—and associated claim for three years of additional living expenses—was justified because Ms. Bolstad-Johnson had concluded that "soot, char, ash, and associated fire residues (including chemicals, gases, particulates, and fungal spores) have permeated every part of the main house, including the interstitial spaces of the walls and the building materials themselves. Moreover, laboratory ***analysis of the contaminated building materials by Kaizen Safety Solutions demonstrates that 'cleaning' will not repair the physical damage to these materials, nor can the contamination be removed*** from the materials (where removal is even possible) without causing significant additional damage. ***Therefore***, because it is Chubb's obligation under the Policy to repair or replace/rebuild all buildings, infrastructure, and landscaping to their pre-fire condition, ***your insureds are entitled to total replacement of the physical destroyed and/or contaminated buildings, infrastructure, and landscaping.***"

Proposed Answer, pp. 26-27 at ¶ 38 (emphasis added in Proposed Answer).

4

begun at that point to test building materials at the Property for damage, no test results had been received." *Id.*, p. 23 at ¶ 22. Furthermore, Federal alleges, Kaizen's CEO, Dawn Bolstad-Johnson, testified in her January 9, 2025 deposition that she "did not visit the Property until December 2020." *Id.*, p. 27 at ¶ 43. According to Federal, she also testified she does not have the background or qualifications "to determine whether the main home on the Property could be restored to its pre-fire condition through cleaning and other remediation measures short of a teardown" and that she "never recommended to Plaintiffs that the main house, pavilion, or wine room be completely replaced because of Glass Fire damage." *Id.*, p. 28 at ¶¶ 44-46.

Federal also adds factual allegations in the Proposed Answer relating to Plaintiffs' ownership of the Property and their unsuccessful attempts to sell it prior to the Glass Fire. *Id.*, pp. 18-20 at ¶¶ 4-14. According to Federal, Plaintiffs built the main house and ancillary structures between 2000 and 2010, at a cost of approximately $ 10 million and the Property is encumbered by two mortgages. *Id.*, p. 18 at ¶¶ 1, 6. During that same period, Plaintiffs allegedly spent "in excess of $400,00 addressing flawed construction and necessary repairs." *Id.*, p. 18 at ¶ 7. Then, "on a nearly continuous basis" between 2011 and 2020, Plaintiffs attempted to sell the property, listing it at between $11.8 million and $16.9 million, but they did "not attract a single offer." *Id.*, p. 19 at ¶¶ 8-10. Plaintiff Ellen Tabios allegedly complained in 2011 that she was hoping to "find a buyer" for the Property, but "[t]he problem is that it could literally take years to unload our, pun intended, White Elephant." *Id.*, p. 19 at ¶ 11. Federal alleges that "[a]s of late summer 2020, Plaintiffs still owed approximately four million dollars on their two mortgages, an amount that far exceeded their cash savings, excluding the amount they had accumulated in a retirement account." *Id.*, p. 20 at ¶ 12. According to Federal, "[a]s of August 2020, one month before the Glass Fire, the Property was on the market for $13.95 million." *Id.*, p. 12 at ¶ 13. Federal alleges that "Plaintiffs offered their real-estate agents at Coldwell Banker 'incentive compensation' to motivate them to 'move fast' and find a buyer within three months' time[ ]" but Plaintiffs received no offers. *Id.*, p. 20 at ¶¶ 13-14.

Federal has also included pictures in the Proposed Answer that purportedly show that the Glass Fire, which did not reach the main house, did little damage to the external landscaping or the

United States District Court
Northern District of California

1    interior of the home. *Id.*, pp. 20-23 at ¶¶ 15-19. In particular, Federal alleges that although "small

2    amounts of soot, ash, and char entered the Property around doors and windows[,]" the interior of

3    the house was "not significantly damaged" and "there was no substantial smoke in the residence."

4    *Id.*, pp. 21-23 at ¶¶ 17-18.

5    Federal further alleges that although it promptly paid $250,000 for Plaintiffs to conduct

6    cleaning efforts recommended by Napa County public health guidance after the Glass Fire and

7    "quicky endeavored to identify and line up fire remediation companies to carry out an industrial-

8    level cleaning of the Property so that Plaintiffs could return home[,]" "Plaintiffs remarkably did

9    nothing to clean or remediate their Property." *Id.*, p. 24 at ¶¶ 24-30. Federal alleges that

10   "Plaintiffs not only refused to engage professional remediation services at the Property, but

11   declined to green light any cleaning efforts like vacuuming or wiping surfaces[,]" "refused to hire

12   a smoke-remediation contractor even to test-clean either the interior or exterior of the home to

13   determine whether the proposed cleaning methods would work[,]" "intentionally left the filters

14   unchanged for years after the Glass Fire as the HVAC continued to run and circulate air in the

15   home[,]" and "ceased general maintenance efforts" including "weekly maintenance cleaning,

16   power washing, pest control, or waterproofing." *Id.*, pp. 24-25 at ¶ 30.

17       **C.    Contentions of the Parties**

18           **1.    Motion**

19   In the Motion, Federal contends there is good cause under Rule 16 of the Federal Rules of

20   Civil Procedure to allow it to add its new affirmative defenses and counterclaims because the

21   evidence showing that Plaintiffs' statements were false came to light only recently and it has been

22   diligent in seeking leave to add the new counterclaims and defenses. Motion at 10-12. Federal

23   argues further that Plaintiffs will not be prejudiced because "Federal's new counterclaims

24   and defenses are based on the existing factual record and will not require additional discovery by

25   Plaintiffs." *Id.* at 12. Federal argues that leave to amend is also warranted under Rule 15 of the

26   Federal Rules of Civil Procedure because it has stated viable claims and therefore amendment is

27   not futile. *Id.* at 12-18.

28

United States District Court
Northern District of California

### 2. Opposition

Plaintiffs oppose Federal's Motion, arguing that amending its answer to add the new counterclaims and defenses would be futile.  Opposition at 4.  They place particular emphasis on the Appraisal Award, "which established the man-made structures of Plaintiffs' Property have suffered more than $32,000,000 of damage, and found the remedy (including demolition, reconstruction, and repairs) would take approximately three years to accomplish."  *Id.* at 5 (citing Appraisal Award at 1 & Ex. A, dkt. no. 88-1).  According to Plaintiffs, these findings are binding under the insurance policy and establish that the October 26, 2020 Statement was "exactly right".  *Id.* (Nidel Dec. ¶ 16 & Ex. 15 (Policy) at Page Y-5 ("Written agreement signed by any two of the three appraisers shall set the amount of the loss."); Cal. Ins. Code § 2083 (appraisals on California property fire losses are binding on insurer)).

Plaintiffs argue further that the Appraisal Award forecloses Federal's argument that the 2021 POLs were fraudulent  because at the time they were submitted, "Plaintiffs had no experts that had ruled out 'cleaning' as the full remedy for the property's contamination, which would have brought the cost down to $250,000."  *Id.*  at 6 (citing Proposed Answer ¶ 30, dkt. no. 189-2; Motion at 6, dkt. no. 189 p. 15).  According to Plaintiffs, Federal's theory fails because "the Appraisal Panel already made a binding determination that cleaning was not the appropriate remedy for Plaintiffs' losses, and that damages for the structures far exceeded $250,000, and were instead approximately $32 million[.]"  *Id.* at 7 (citing Appraisal Award, dkt. no. 88-1).

Plaintiffs also point to statements by the Court at the July 8, 2022 hearing on their motion to compel an appraisal, in which the Court rejected Federal's argument that the question of whether the structures on the insured property needed to be demolished and rebuilt or instead, needed only to be cleaned, was a coverage question.  Nidel Decl., Ex. 19 (7/8/22 Hearing Transcript) at 10.  In particular, in response to a statement by Federal's counsel that this was "a coverage question," the Court stated, "No, it is not a coverage question. It is a damage question. . . . The question is: Is there enough damage that it requires the remedy of knocking the house down and building it up new or does it require an intense cleaning[.]"  *Id.*

Plaintiffs reject Federal's "attempt to argue pre-existing wear and tear, gradual release or

1   deferred maintenance, etc. are no longer relevant to the claim[,]" arguing that the panel "evaluated

2   the change in condition of the main house from immediately before the fire to after the fire[ ]" and

3   therefore, "any pre-existing damage or diminution in value is 'baked in' to the Appraisal Award."

4   Opposition at 9. Plaintiffs point out that in declining to vacate the Appraisal Award, the Court

5   found that "the [p]anel 'did not act improperly' to the extent that it made such determinations of

6   'pre-loss condition as of the Date of Loss.' " *Id.* at 10 (quoting Order re Motion to Vacate at 29).

7       As to the Court's conclusion regarding causation, Plaintiffs assert that "the Court found

8   that even if the Award could be read to imply that certain causal facts were true, 'the panel

9   expressly disclaimed making any such findings.' " *Id.* (citing Order re Motion to Vacate at 28).

10  Based on the Court's discussion of causation, Plaintiffs conclude that "there is a material

11  difference between: (a) a situation where (as here) an appraisal panel finds certain facts within its

12  authority (e.g., facts pertaining to quality or condition of property at particular points in time); and

13  (b) a situation where the panel makes a finding of causation (e.g., the Glass Fire was the cause of

14  the loss)." *Id.* (citing *Kacha v. Allstate Ins. Co*., 140 Cal.App.4th 1023 (2008) (appraisal panel

15  exceeded authority by eliminating certain damages based on a theory of causation)). In the former

16  scenario, Plaintiffs assert, the findings of the appraisal panel are binding. *Id.*

17      Plaintiffs also argue that Federal misrepresents the statements in the September 27, 2021

18  Letter from Plaintiffs to Federal as to what Bolstad-Johnson had told them about the need to

19  demolish and rebuild the main house. *Id.* at 10-11. Plaintiffs point to the following statement in

20  the Motion as an example: "The next month, Plaintiffs represented to [Federal] that an industrial

21  hygienist at Kaizen Safety solutions, Dawn Bolstad-Johnson, **had determined** that alleged Glass

22  Fire damage on the Property could not be addressed through repairs and thus the entire Property

23  needed to be demolished and completely replaced[.]" *Id*. at 10 (quoting Motion at 1) (emphasis

24  added in Plaintiffs' Opposition). But according to Plaintiffs, they made no such representation. *Id.*

25  According to Plaintiffs, Bolstad-Johnson's "conclusions were entirely with respect to the chemical

26  nature and extent of infiltration of smoke damage, consistent with the scope of her retention and

27  expertise." *Id.* at 11.

28      Nevertheless, Plaintiffs assert, they "are allowed to rely on the findings and advice of their

United States District Court
Northern District of California

8

experts, the laboratory results their experts receive, as well as the Plaintiffs' own knowledge and experience, and draw the conclusion that the main home could not be remedied by 'cleaning.'" According to Plaintiffs, that is what they did in the letter, which states, in part:

> [Federal] has reports prepared by experts retained by your insureds, including a collection of reports prepared by Kaizen Safety Solutions, which explain in detail that soot, char, ash, and associated fire residues (including chemicals, gases, particulates, and fungal spores) have permeated every part of the main house, including the interstitial spaces of the walls and the building materials themselves. Moreover, laboratory analysis of the contaminated building materials by Kaizen Safety Solutions **demonstrates** that "cleaning" will not repair the physical damage to these materials, nor can the contamination be removed from the materials (where removal is even possible) without causing significant additional damage.

Nidel Dec. ¶ 2, Ex. 1 (September 27, 2021 Letter), p. 2 (emphasis added in Plaintiffs' Opposition). Federal's argument is "incoherent[,]" Plaintiffs contend: "That incoherence is most obviously on display on page 11 of [Federal's] memorandum, where [Federal] argues that Plaintiffs' claim that 'Ms. Bolstad Johnson's testing and analysis supported their replacement claim' was supposedly a 'deliberate misrepresentation' because, 'in fact, Ms. Bolstad-Johnson never recommended that the Property needed to be replaced and could not be repaired.' " *Id.* at 12 (quoting Motion at 11). Plaintiffs reason, "Naturally, that she never recommended replacement does not mean that one could not conclude that her and the other experts' testing and analysis 'supported' replacement—the same conclusion ultimately reached by the Appraisal Panel." *Id.*

Furthermore, Plaintiffs assert, they had at the time of the September 27, 2021 Letter (as indicated in the letter) also received reports from a number of other experts whose findings supported the conclusion that cleaning would not be sufficient. *Id.* at 12. In particular, prior to the submission to Federal of the 2021 POLs, "Plaintiffs had building contractors, subcontractors, a certified industrial hygienist, an expert in stucco, plaster and waterproofing, roofing experts, an electronics expert, an arborist, a landscaper, geotechnical experts, a forester, an expert in piano repair, a structural engineer, an expert in septic systems and others investigate the effects of the Glass Fire on Plaintiffs' main house." *Id.* at 13. Plaintiffs have provided a chart listing some of these reports and quoting statements from them purportedly illustrating the seriousness of the damage to their home, as well as copies of the reports as exhibits. *Id.* at 13-16; Nidel Decl., Exs.

1, 6, 10, 11, 16 & 22. According to Plaintiffs, "Given the extraordinary wealth of documented information provided to both to Plaintiffs and to [Federal], it is simply not possible for [Federal] to advance a viable claim for fraud or breach of contract based on the statements actually made by Plaintiffs' counsel in their letter of September 27, 2021." *Id.* at 16.

Plaintiffs also argue that Federal's new claims are barred to the extent they are based on statements in the September 27, 2021 Letter because those statement fall under California's litigation privilege, codified in California Civil Code § 47(b). *Id.* at 17-18. Furthermore, Plaintiffs contend, all of the statements on which the new defenses and counterclaims are based are opinion statements rather than assertions of fact and therefore cannot be the basis for any fraud claim. *Id.* at 18 (citing *Seeger v. Odell*, 18 Cal.2d 409, 414 (1941); *Smith v. Brown*, 59 Cal.App.2d 836, 838 (1943)). This is especially true, according to Plaintiffs, because "in the insurance context . . . it is clear that 'a mere inflated opinion of a claim's value is not fraud,' and that '[t]here is a significant distinction between a mere aggressive claims position and an outright factual fraud.'" *Id.* (quoting *Agric. Ins. Co. v. Superior Ct.*, 70 Cal. App. 4th 385, 390 (1999)).

Plaintiffs also argue that Federal has not demonstrated that there is good cause to allow the new claims under Rule 16. *Id.* at 19. First, they contend Federal was not diligent because it relies entirely on the January 2025 deposition testimony of Bolstad-Johnson to establish timeliness, but, as discussed above, that testimony does not support Federal's claim that Plaintiffs' made fraudulent statements about Bolstad-Johnson's findings. *Id.* In fact, Plaintiffs assert, there is nothing new about Federal's position and it has already made the same assertions that Plaintiffs "[c]laim[ed] grossly inflated losses in their proofs of loss and examinations under oath without credible support" in the course of the appraisal and also in its now-dismissed counterclaim for breach of the covenant of good faith and fair dealing. *Id.* at 19-20. According to Plaintiffs, Federal "had all the information it needed to assert its fraud claims at least as early as June 2024 – the same time that it asserted its counterclaim for violation of the covenant of good faith and fair dealing." *Id.* at 20. Therefore, Plaintiffs contend, Federal cannot meet Rule 16's diligence requirement. *Id.*

Plaintiffs further assert that there is not good cause under Rule 16 to permit Federal to file

10

its Proposed Answer because it misrepresents Plaintiffs' statements about what Bolstad-Johnson had told them, as discussed above. *Id.* at 21. Furthermore, they argue that they would be prejudiced if Federal were permitted to add these defenses and counterclaims "seeking the recovery of damages as to which there has been no discovery whatsoever." *Id.* at 22. If the Court were to permit Federal to assert these new claims, Plaintiff asserts that it would be entitled to conduct discovery related to the "quantum of damages allegedly suffered by [Federal], . . . proof of fraud in [Federal's] possession and the reasonableness of [Federal's] reliance, and [Federal's] actual actions and attitudes towards the supposedly false statements." *Id.*

### 3. Reply

In its Reply, Federal asserts that Plaintiffs' "opposition-brief concessions . . . confirm the merits of Federal's motion." Reply at 1. According to Federal, Plaintiffs do not dispute its allegations about their unsuccessful attempts to sell the Property before the Glass Fire, the financial burden of maintaining the property, or their refusal to conduct any cleaning following the Glass Fire despite being paid $250,000 by Federal for cleaning and remediation. *Id.* According to Federal, "[t]hese apparently undisputed facts are more than sufficient at the pleading stage for Federal to state counterclaims and affirmative defenses for fraud and breach of contract." *Id.*

Federal rejects Plaintiffs' reliance on the Appraisal Award to argue that its claims are barred, arguing that issues of causation cannot be decided by appraisers under California law, as the Court has already held, and that "Federal will prove at trial that the damage about which Plaintiffs complain—and for which the appraisal entitles them to a maximum of $32 million in replacement damages—was caused, not by the Glass Fire, but by (among other things) wear and tear and deterioration that pre-existed the September 2020 Glass Fire and is excluded under the Federal policy at issue." *Id.* at 2.

Federal also rejects Plaintiffs' suggestion "that they could have reasonably made ***their own*** determination that the Glass Fire caused damage requiring the Property to be replaced, and that there was no need to rely on experts in reaching such a conclusion." *Id.* (citing Opposition at 12) (emphasis in original). This argument fails, Federal contends, because "an important aspect of the fraud here is that Plaintiffs told Federal repeatedly that they were relying on outside consultants to

11

support their Glass Fire replacement claim—and specifically identified work by Kaizen Safety Solutions in claim correspondence and sworn testimony." *Id.*  Furthermore, Federal contends, although Plaintiffs point to "sixteen reports in their Opposition, ***Plaintiffs do not identify a single report recommending that Plaintiffs replace their Property*."** *Id.* (emphasis in original).

Federal also argues that amendment to add the new counterclaims and defenses will not prejudice Plaintiffs as they have been aware for years that Federal reserved its right to assert fraud and breach of contract claims.  *Id.*  In any event, Federal asserts, as no trial date has been set, "[a] discrete supplemental-discovery agreement could plug any open holes without disrupting the overall case schedule." *Id.*

In response to Plaintiffs' futility arguments, Federal rejects Plaintiffs' assertion that the three statements that are the basis of the fraud and breach of contract counterclaims in the Proposed Answer are opinion statements.  *Id.* at 3-4.  Even if they were, Federal argues, they can form the basis for Federal's fraud allegations because the statements imply the existence of facts that were nonexistent.  *Id.* at 4-5 (citing *Seeger v. Odell*, 18 Cal.2d 409, 414 (1941);  *Pacesetter Homes, Inc. v. Brodkin*, 5 Cal. App. 3d 206, 211 (1970); *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc*., 953 F.3d 1108, 1119 (9th Cir. 2020*); Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 893 (2013)).  In any event, Federal asserts, this is not a proper basis to deny Federal's Motion because "[w]here there is a reasonable doubt as to whether a particular statement is an expression of opinion or the affirmation of a fact, the determination rests with the trier of the fact." *Id.*  (quoting *Consol. Container Co. LP v. Ecoplast Corp*., 2017 WL 3047894, at *6 (C.D. Cal. Apr. 27, 2017)).

As to the Appraisal Award, Federal states that its significance is "that the parties and Court are now operating under a finding that as of the date of the claimed loss (i.e., September 27, 2020), the cost to address damage on Plaintiffs' property was approximately $32 million" but that this "off-the-record and informal appraisal—memorialized by only three bullet points with no explanatory rationale—by no means establishes that the Glass Fire *caused* $32 million in damage." *Id.* at 5.  Federal argues that under California law and the Court's Order on its Motion to Vacate, causation "remains to be decided" and it intends to prove at trial that "all the damage

about which Plaintiffs complain was caused by things other than the Glass Fire." *Id.* Federal further asserts that "[i]f the fact finder agrees with Federal that the house needs to be replaced not because of the Glass Fire but because of wear and tear, the appraisal cannot protect Plaintiffs from a further finding that—consistent with Federal's proposed pleading— Plaintiffs came to see the Glass Fire as an opportunity to defraud Federal and finally unload their Property and enrich themselves." *Id.* at 6-7. Federal rejects Plaintiffs' assertion "that the exclusions for wear and tear and deterioration are 'no longer relevant' because any pre-existing damage is 'baked in' to the appraisal award[,]" arguing that Plaintiffs' position is inconsistent with the Court's ruling that causation remains to be decided. *Id.* at 7.

Federal argues further that Plaintiffs are wrong as to their assertion that statements in the September 27, 2021 Letter are protected under California's litigation privilege. *Id.* According to Federal, the statements were made in routine claims correspondence three months before this litigation was filed and therefore, that privilege does not apply. *Id.* at 7-8 (citing *In re Tower Park Properties, LLC*, 2024 WL 5203068, at *14 (C.D. Cal. Dec. 20, 2024); *Goldberg v. TeachBK, Inc.*, 2025 WL 296143, at *15 (N.D. Cal. Jan. 24, 2025)). Furthermore, Federal contends, " '[t]he determination of whether . . . statements were made to achieve the objects of [litigation] and have a logical relation to the action is a question of fact' that is not suitable for resolution at the pleading stage." *Id.* at 8 (quoting *Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1096 (S.D. Cal. 2018)).

In response to Plaintiffs' assertion that the statements in the September 27, 2021 Letter are misrepresented by Federal and they did not represent that Bolstad-Johnson had actually *recommended* replacement of the structure over cleaning and remediation, Federal asserts that this is a question for the jury. *Id.* Federal argues that to the extent that Plaintiffs now contend that their claim that the main house needed to be replaced was merely the opinion that Plaintiffs or their attorneys reached based on the reports they had received, that "late-breaking claim" "is a 180-degree reversal from Plaintiffs' otherwise consistent refrain that they were relying on experts to conclude that their Property must be replaced." *Id.* at 9-10. In support of this assertion, Federal points to deposition testimony by both of the plaintiffs in which they deferred to their

experts as to whether the main house would need to be replaced.  *Id.* (citing Supp. Godesky Decl., Exs. 3-5).

Federal argues that the sixteen reports submitted by Plaintiffs with their Opposition "confirm Federal's pleading that, as of September 27, 2021, not a single expert or consultant concluded that the Property needed to be completely replaced because of Glass Fire damage." *Id.* at 10-12. Federal also argues that there is no evidence of bad faith or prejudice. *Id.*  at 12-13. Finally, Federal argues that there is good cause under Rule 16 to allow its amended pleading because "the counterclaims and affirmative defenses raised in Federal's amended pleading are based primarily on facts that only came to light through discovery over the past few months, including the January 9, 2025 deposition of Bolstad- Johnson and Plaintiffs' production of more than 50,000 documents in November and December 2024." *Id.*  at 14.  And according to Federal, "Plaintiffs are simply wrong that Federal's 'entire argument' is based on Ms. Bolstad-Johnson's testimony."  *Id.*  Rather," Federal's amended pleading contains numerous new allegations regarding Plaintiffs' motives for committing fraud, including the fact that they were bogged down with costly repairs almost from the moment they finished construction, that they were under substantial financial pressure and trying to sell the property for nearly a decade before the Fire, and that they lamented frequently about efforts to rid themselves of the Property." *Id.* (citing Proposed Answer ¶¶ 4-11). Federal represents that "[t]hese allegations are based on documents produced by Plaintiffs between November and December 2024 and could not have been asserted earlier." *Id.*

## III.   ANALYSIS

### A.   Legal Standards

#### 1.  Rule 16

Under Rule 16 of the Federal Rules of Civil Procedure, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).   The good cause inquiry focuses primarily on "the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992).  "The decision to modify a scheduling order is within the broad discretion of the district court." *Benchmark Young Adult*

1    *Sch., Inc. v. Launchworks Life Servs.*, LLC, No. 12-CV-02953-BAS BGS, 2014 WL 3014720, at

2    *2 (S.D. Cal. July 3, 2014) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d at 607–608).

3    Once the court has found that there is good cause under Rule 16, it proceeds to address the

4    question of whether amendment of the complaint is appropriate under Rule 15(a) of the Federal

5    Rules of Civil Procedure.  *Id.* at *3 ("If . . . the movant clears the Rule 16 bar, the Court proceeds

6    to considering the motion [for leave to amend] under the usual standard of Rule 15") (citation

7    omitted).

8                **2.  Rule 15(a)**

9        Pursuant to Rule 15(a), a party may amend a pleading once as a matter of course;

10   subsequently, it may only amend after obtaining leave of the court, or by consent of the adverse

11   party.  *See* Fed.R.Civ.P. 15(a).  Rule 15 advises the court that "leave shall be freely given when

12   justice so requires."  Fed.R.Civ.P. 15(a)(2).  "[T]his policy is to be applied with extreme

13   liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). "Courts

14   may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or

15   dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

16   previously allowed, undue prejudice to the opposing party by virtue of allowance of the

17   amendment, [or] futility of amendment, etc.'" *Sonoma County Ass'n of Retired Employees v.*

18   *Sonoma County*, 708 F.3d 1109,  1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178,

19   182 (1962)).  "A proposed amendment is futile if it would not survive a motion to dismiss for

20   failure to state a claim." *Id.* (citing *Miller v. Facebook, Inc.*, 2010 WL 2198204, at *3 (N.D. Cal.

21   May 28, 2010)).

22               **3.  Rule 12(b)(6)**

23        In ruling on a motion to dismiss for failure to state a claim, which is governed by Rule

24   12(b)(6) of the Federal Rules of Civil Procedure, the court analyzes the complaint and takes "all

25   allegations of material fact as true and construe[s] them in the light most favorable to the non-

26   moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal

27   may be based on a lack of a cognizable legal theory or on the absence of facts that would support a

28   valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

*United States District Court*
*Northern District of California*

To survive a motion to dismiss, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### 4. Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure establishes a heightened pleading standard for claims sounding in fraud. It provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In order to meet this heightened standard, "a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Cafasso, v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alterations in original).

### 5. Breach of Insurance Contract Based on Fraud

"A fraud and concealment provision in an insurance contract will generally void the policy where an insured attempts to defraud the insurer." *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 853 (N.D. Cal. 2011) (citing *Leasure v. MSI Ins. Co.*, 65 Cal.App.4th 244, 248 (1998)). Such an attempt "may take place in an application to obtain insurance coverage or in an attempt to obtain benefits." *Id.* To prevail on a claim for breach of a fraud or concealment provision in an insurance contract, "the insured's misrepresentation must relate to a material matter" and the "untrue statement must be knowingly and intentionally made, with the intent to deceive or defraud the insurer[.]" *Id.* (citations omitted).[4] "Although a mere inflated opinion of a claim's value is not

---

[4] The parties did not address whether a claim for breach of a misrepresentation or concealment provision in an insurance contract must be pleaded with particularity. The Court has found at least

16

fraud, deliberately false factual assertions can be fraud." *Agric. Ins. Co. v. Superior Ct*., 70 Cal. App. 4th 385, 390 (1999). Thus, for example, "[i]f, because of the insured's false factual assertions, the insurer incurs expenses that would otherwise not have been necessary, justifiable detrimental reliance can be pleaded by the insurer" in support of a claim for breach of a misrepresentation or concealment provision in the insurance contract. *Id.*

### 6. Common Law Fraud

To state a claim for fraudulent misrepresentation, "a plaintiff must allege the following elements: (1) misrepresentation by way of a false representation, concealment or non-disclosure; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage." *Sunrise Senior Living Mgmt., Inc. v. Midstone, Inc*., No. 222CV003377MEMFPVCX, 2022 WL 4842916, at *3 (C.D. Cal. Sept. 30, 2022) (citing *Green Hills Software, Inc. v. Safeguard Scis. and SPC Priv. Eq. Partners*, 33 Fed. Appx. 893, 895 (9th Cir. 2002)). "Because a fraudulent misrepresentation claim is one that alleges fraud or mistake, it is subject to the heightened pleading requirement under Rule 9(b) and must be pleaded with particularity." *Id.* (citing Fed.R.Civ.P. 9(b); *In re Stac Elecs. Securities Litig*., 89 F.3d 1399, 1405 (9th Cir. 1996)).

**B.    Whether there is Good Cause to Modify the Scheduling Order Under Rule 16(b)**

Plaintiffs contend Federal was not diligent in bringing its Motion because it "had all the information it needed to assert its fraud claims at least as early as June 2024 – the same time that it asserted its counterclaim for violation of the covenant of good faith and fair dealing." Opposition at 20. They contend the deposition testimony of Bolstad-Johnson is the only "new evidence" Federal has offered and discount that evidence because it does not, according to Plaintiffs, demonstrate that they engaged in any fraudulent misrepresentations or concealment. *Id.* The

---

one case that suggests that such a claim is not governed by Rule 9(b)'s heightened pleading requirements because the claim sounds in contract. *See HTI Holdings, Inc. v. Hartford Cas. Ins. Co.,* No. CIV. 10-6021-AA, 2011 WL 6205903, at *9 (D. Or. Dec. 8, 2011) (holding under Oregon law that counterclaim by insurance company against insured for breach of misrepresentation or concealment provision in policy was "based on breach of contract, not common law fraud, [and therefore] the heightened pleading requirements [of Rul 9(b)] [were] inapplicable."). The Court need not decide this question, however, because it finds that Federal's claim is adequately alleged under either standard.

1    Court finds Plaintiffs' argument unpersuasive.

2          First, the Court rejects Plaintiffs' argument that Federal was not diligent because it could

3    have asserted the new counterclaims and defenses as early as June 2024.  As the Court noted when

4    it rejected a similar argument by Federal in response to Plaintiffs' request to add a new claim,

5    Plaintiffs' "argument overlooks the fact that until November  5, 2024, there was a pending motion

6    brought by Federal to vacate the [appraisal] award."  Waiting for the Court to decide that Motion

7    before seeking to add new claims to the case was reasonable (for both Plaintiffs and Federal) and

8    does not show a lack of diligence.[5]

9          Second, in its Proposed Answer, Federal does not just identify the statements made in 2020

10   and 2021 that it contends were fraudulent; it also alleges facts that it contends show that Plaintiffs

11   intentionally misstated facts to support what Federal alleges was an inflated claim.  Given that the

12   vast majority of Plaintiffs' document production occurred after November 1, 2024, and key

13   depositions (including that of Bolstad-Johnson) did not occur until 2025, the Court has no reason

14   to question Federal's representation that "[t]hese allegations are based on documents produced by

15   Plaintiffs between November and December 2024 and could not have been asserted earlier."  *See*

16   Reply at 14.

17         Finally, Plaintiffs' assertion that the January 9, 2025 deposition testimony of Bolstad-

18   Johnson should be disregarded because it does not support Federal's new counterclaims and

19   defenses is a merits argument.  Because the Court finds that Federal's new counterclaims and

20   defenses are plausibly alleged – including to the extent they are based on statements in the

21   September 21, 2027 Letter referring to Bolstad-Johnson's test results – the Court rejects this

22   argument.

23         For these reasons, the Court finds that Federal was sufficiently diligent in bringing the

24   instant Motion to support a finding of good cause.  The Court therefore proceeds to address

25   whether the requirements of Rule 15 are satisfied.

26

27   _____
     [5] Plaintiffs also assert that Federal's delay in seeking to add the new counterclaims and defenses
     indicates that the Motion was not brought in "good faith."  Opposition at 3.  The Court rejects this
28   argument for the same reason it finds that Federal was sufficiently diligent to support a finding of
     good cause under Rule 16.

United States District Court
Northern District of California

United States District Court
Northern District of California

### C.    Whether Leave to Amend is in the Interest of Justice Under Rule 15(a)

Plaintiffs argue that amendment is futile and that they will be prejudiced if Federal is permitted to amend its answer to add its new counterclaims and defenses.  The Court rejects both arguments.

#### 1.  Futility

Plaintiffs assert that the new counterclaims and defenses fail because: 1)  the statements identified by Federal are non-actionable opinions; 2) the statements in the September 27, 2021 Letter are protected by California's litigation privilege; 3) the deposition testimony of Bolstad-Johnson is not inconsistent with Plaintiffs' statements in the September 27, 2021 Letter, which Federal mischaracterizes and therefore, those statements are not actionable; and 4) findings of the appraisal panel that Plaintiffs contend are binding establish that  Plaintiffs' statements were not false. The Court finds that Federal has plausibly alleged its counterclaims and defenses and that amendment is not futile.

#### a.   Federal's Allegations are Sufficient to State a Claim

As discussed above, Federal has identified three statements Plaintiffs made about their claim it contends were false.  Because all of the statements "concern[ed] a subject reasonably relevant to the insured's investigation, and . . . a reasonable insurer would attach importance to the fact misrepresented," the statements are material. *Nationwide Mut. Ins. Co. v. Ryan*, No. 12-CV-05000-JST, 2014 WL 4793890, at *6 (N.D. Cal. Sept. 25, 2014) (quoting *Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407, 1417 (1988));  *see also Chierfue Her v. State Farm Ins. Co.*, 92 F. Supp. 3d 957, 969–70 (E.D. Cal. 2015) ("Claiming a loss for things that were not damaged by the covered event, or deliberately overstating the value or replacement cost of insured property, constitute material misrepresentations."). Federal also has alleged sufficient facts to raise a plausible inference that Plaintiffs knew the statements were false when made and intended to deceive Federal.  The Court notes that these are generally questions are questions of fact. *Chierfue Her v. State Farm Ins. Co.*, 92 F. Supp. 3d 957, 969 (E.D. Cal. 2015) (citation omitted). Consequently, Federal need only allege facts that give rise to a plausible inference, drawing all reasonable inferences in favor of Federal, at this stage of the proceedings.

United States District Court
Northern District of California

1
                **b. Whether Counterclaims are Barred Because Statements are Opinions Rather than Facts**

2          Plaintiffs contend the three statements "were not assertions of some objectively verifiable

3 fact" but were, instead, "claims for coverage under the Policy in the form of opinions" and

4 therefore non-actionable. Opposition at 18. The Court finds that this issue is more appropriately

5 addressed at summary judgment or trial as this defense turns on fact questions.

6          Under California law, a claim for fraudulent misrepresentation generally may not be

7 asserted based on "mere statements of opinion." *Seeger v. Odell*, 18 Cal. 2d 409, 414 (1941).

8 Nonetheless, "[i]f . . . the opinion or legal conclusion misrepresents the facts upon which it is

9 based or implies the existence of facts which are nonexistent, it constitutes an actionable

10 misrepresentation." *Id.* "When a statement, although in the form of an opinion, is not a casual

11 expression of belief but a deliberate affirmation of the matters stated, it may be regarded as a

12 positive assertion of fact." *Neu–Visions Sports, Inc. v. Soren/ McAdam/ Bartells*, 86 Cal. App. 4th

13 303, 307 (2000). " 'Where there is a reasonable doubt as to whether a particular statement is an

14 expression of opinion or the affirmation of a fact, the determination rests with the trier of the

15 fact.'" *Pacesetter Homes, Inc. v. Brodkin*, 5 Cal. App. 3d 206, 212 (1970) (quoting *Willson v.*

16 *Mun. Bond Co*., 7 Cal. 2d 144, 151 (1936)).

17          Here, the Proposed Answer alleges sufficient facts to support a plausible inference that the

18 statements at issue, even if opinions, misrepresented the facts on which they were based and/or

19 suggested the existence of facts that were nonexistent. Therefore, Plaintiffs' argument does not

20 establish futility as to Federal's new counterclaims and defenses.

21               **c. Whether the Statements in the September 27, 2021 Letter are Protected by California's Litigation Privilege**

22          Plaintiffs contend the September 27, 2021 Letter, which was drafted by their attorney,

23 was "part of pre-litigation correspondence" with Federal and therefore, is covered by California's

24 litigation privilege, codified at California Civil Code § 47(b). Opposition at 17-18. The Court

25 finds, again, that this defense turns on disputed facts and therefore should not be decided on the

26 pleadings.

27          Section 47(b) provides that "[a] privileged publication or broadcast is one made . . . in any

28

United States District Court
Northern District of California

. . . judicial proceeding." Cal. Civ. Code § 47(b). "It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006). In *Edwards v. Centex Real Est. Corp.*, the court asked, "at what point on the continuum between the mere possibility of an action and the reality of a filed lawsuit does the privilege attach?" 53 Cal. App. 4th 15, 33 (1997). The *Edwards* court identified four parameters for answering this question. First, it concluded that "the communication must have been made preliminary to a *proposed* judicial or quasi-judicial proceeding." *Id.* at 34 (citing Rest.2d Torts, §§ 586–588 & com. e, pp. 247–251) (emphasis in original)). "That is, a lawsuit or some other form of proceeding must actually be suggested or proposed, orally or in writing." *Id.* Second, "the verbal proposal of litigation must be made *in good faith*. *Id.* at 35 (emphasis in original). "Third, the contemplated litigation must be *imminent*." *Id.* "Finally, the litigation must be proposed in order to obtain access to the courts *for the purpose of resolving the dispute*." *Id.* 35 (emphasis in original).

As noted by Plaintiffs, the September 27, 2021 Letter "addresses sixteen separate issues that were germane to the lawsuit ultimately filed in this matter." Opposition at 18 (citing Nidel Decl., Ex. 1 (September 27, 2021 Letter). Those issues were also germane to Plaintiffs' insurance claim, however. Moreover, while the letter states that Plaintiffs believed "Federal's "conduct [was] in violation of California law", it does not make any mention of litigation. Instead, it goes on to state, "your insureds are interested in engaging in a constructive discussion with [Federal] about how best to resolve this claim." Nidel Decl., Ex. 1. In other words, the letter may be routine claim correspondence that falls outside of the scope of the litigation privilege. *See Mezzetti v. State Farm Mut. Auto. Ins.* Co., 346 F. Supp. 2d 1058, 1066 (N.D. Cal. 2004) (finding that letter from insurance company to the plaintiff's lawyer that addressed the plaintiff's claim but made no mention of litigation was not, as a matter of pleading, privileged under Cal. Civ. Code § 47(b)). This is a fact question that cannot be decided on the pleadings. *See Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1096 (S.D. Cal. 2018) ("The determination of whether the statements were made to achieve the objects of the quasi-judicial proceedings and have a logical relation to the action is a question of fact not suitable for disposition on a motion to dismiss."). The Court here

1    finds only that Plaintiffs have pointed to nothing that establishes, *as a matter of law*, that the

2    statements in the September 27, 2021 letter are privileged. Therefore, the Court rejects Plaintiffs'

3    futility argument based on the litigation privilege.

> d.    Whether the Statements in the September 27, 2021 Letter Misrepresented
>       Bolstad-Johnson's Findings

6    Plaintiffs assert that Federal's new counterclaims and defenses fail as to the statements in

7    the September 21, 2021 Letter because the Letter does not actually say that Bolstad-Johnson found

8    that cleaning would not be sufficient to remediate the damage to Plaintiffs' home. Instead,

9    Plaintiffs suggest that this was the conclusion drawn by Plaintiffs and their attorney *based on* the

10   "laboratory analysis of the contaminated building materials by Kaizen Safety Solutions." Nidel

11   Decl., Ex. 1. Plaintiffs may make this argument to the jury to establish that there was no

12   misrepresentation or that they had no intent to deceive. However, at the pleading stage, Federal's

13   allegation that the statement in the letter constituted a representation that it was *Kaizen* that

14   concluded that cleaning would not be enough is sufficiently plausible to state a claim. Therefore,

15   the Court rejects Plaintiffs' futility argument based on the assertion that Federal has

16   mischaracterized the statement in the September 27, 2021 Letter.

> e.    Whether Federal's Counterclaims and Defenses are Barred as to the October
>       26, 2020 Statement and the 2021 POLs by the Appraisal Award

18   Plaintiffs' argument that Federal's counterclaims and defenses are barred as to the October

19   26, 2020 Statement and the 2021 POLs by the Appraisal Award is based on a misreading of the

20   Court's Order re Motion to Vacate, dkt. no. 134. In that Order, the Court explained that while the

21   Appraisal Panel did not act improperly to the extent that it appraised the loss as the "[c]ost of

22   repairs to return the Man-Made structures to their pre-loss condition as of the Date of Loss[,]"

23   where there are disputes about causation of loss in the context of insurance coverage case, the

24   parties are entitled to have those disputes resolved by the Court. In other words, any implicit

25   findings by the appraisal panel that damage they assessed was caused by the Glass Fire, as

26   opposed to something else, are *not* binding to the extent those findings are disputed. Instead,

United States District Court
Northern District of California

1   Federal is entitled to litigate those disputes in this Court.[6] Furthermore, Plaintiffs' attempt to draw

2   a distinction between "(a) a situation where (as here) an appraisal panel finds certain facts within

3   its authority (e.g., facts pertaining to quality or condition of property at particular points in time);

4   and (b) a situation where the panel makes a finding of causation (e.g., the Glass Fire was the cause

5   of the loss)" is not persuasive:  the argument here is that the findings of "fact" by the panel

6   implicitly make findings about causation.  That question must be resolved on summary judgment

7   or trial, not as a pleading matter..  Thus, Plaintiffs cannot demonstrate futility by relying on the

8   Appraisal Award.

9                      **2.   Prejudice**

10          Plaintiffs' argument that they will be prejudiced by Federal's late addition of its new

11   counterclaims and defenses is perfunctory and unpersuasive. As Plaintiffs have emphasized,

12   Federal has made it clear since early in the case that it believes Plaintiffs inflated their claims and

13   it expressly reserved the right to assert its fraud claims pending discovery.  *See, e.g.,* Federal's

14   Opposition To Plaintiffs' Motion To Dismiss Federal's Counterclaim, filed 8/15/2024,  dkt. no.

15   117 ("Federal's pleading acknowledges that—while Federal maintains serious concerns that

16   Plaintiffs may have breached the Policy's misrepresentation-and-concealment provision—Federal

17   is not currently asserting a claim or defense based on Plaintiffs' breach of that provision, but

18   'expressly reserves its right to further amend' to assert misrepresentation or fraud 'to the extent

19   discovery uncovers further evidence of Plaintiffs' breach.'") (quoting Am. Answer at 16, ¶ 15).

20   Thus, Plaintiffs were aware during fact discovery that Federal might seek to add counterclaims

21   and defenses sounding in fraud.  Indeed, Federal's counsel has attested that Plaintiffs questioned

22   its 30(b)(6) witness, Christopher Lassiter (the claims adjuster on Plaintiffs' claim), at his January

23   7, 2025 deposition about "whether Federal believed Plaintiffs' committed fraud in connection with

24   their insurance claim and Federal's evidence that Plaintiffs' committed fraud." Godesky Supp.

25   _____

26   [6] This is not to say that there are *no* issues as to which the Appraisal Award is binding.  As Federal
     concedes, "the parties and Court are now operating under a finding that as of the date of the

27   claimed loss (i.e., September 27, 2020), the cost to address damage on Plaintiffs' property was
     approximately $32 million."  Reply at 5.  How that finding will come into play at trial (or on

28   summary judgment) is a question that the Court anticipates will be disputed and may require
     briefing.  The Court need not address that question here.

United States District Court
Northern District of California

1    Decl., ¶ 9.  Given that no trial date has yet been set and the deadline for filing dispositive motions

2    is more than four months away, the Court is confident that the parties can work together to address

3    any additional fact discovery that Plaintiffs reasonably need to address the new counterclaims and

4    defenses.  Therefore, Plaintiffs will not be prejudiced by the addition of Federal's new

5    counterclaims and defenses.

6    **IV.    CONCLUSION**

7          For the reasons stated above, the Motion is GRANTED.

8

9    Dated:  April 1, 2025

10                                              _____

11                                              JOSEPH C. SPERO
                                                United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California